445 F.2d 955
 Jeffrey Glen SMITH, Plaintiff-Appellant,
v.
H. W. FOLLETTE, Warden, Green Haven Prison, Defendant-Appellee.
UNITED STATES of America ex rel. Harry KYLE, Relator-Appellant,
v.
Vincent R. MANCUSI, Warden, Attica State Prison, Respondent-Appellee.
 Nos. 938, 939, Dockets 35416, 35529.
 United States Court of Appeals, Second Circuit.
 Argued May 5, 1971.
Decided July 8, 1971.
 
 Herman Schwartz, Buffalo, N.Y., for plaintiff-appellant and relator-appellant.
 John G. Proudfit, Asst. Atty. Gen. (Louis J. Lefkowitz, Atty. Gen. of the State of New York, Samuel A. Hirshowitz, First Asst. Atty. Gen., Benton J. Levy, Asst. Atty. Gen., of counsel), for defendant-appellee and respondent-appellee.
 Before LUMBARD, SMITH and KAUFMAN, Circuit Judges.
 J. JOSEPH SMITH, Circuit Judge:
 
 
 1
 Appellants in these two cases, which were argued and are considered together, challenge the constitutionality under the Fourteenth Amendment's Equal Protection and Due Process Clauses of New York State's Mental Hygiene Law, McKinney's Consol.Laws c. 27, Section 208, subd. 4(b). A challenge premised upon the Equal Protection Clause is also made against section 208, subd. 5 of the same act. Under the terms of section 208, subd. 4(a), part of a broader statute enacted in 1966 dealing with the problems of narcotics addiction,[1] a person found to be a narcotics addict who has pleaded guilty to or been found guilty of a misdemeanor or the offense of prostitution is automatically certified to the care of the Narcotics Addiction Control Commission (NACC) for treatment. In situations where the defendant has pleaded guilty to or been found guilty of a felony, under the terms of section 208, subd. 4(b), the sentencing court may in its discretion either certify the defendant for treatment under the auspices of the NACC or sentence him to prison. Section 208, subd. 5 provides that 'in no case to which subdivision four of this section is applicable shall the court suspend sentence, the execution thereof or impose a sentence other than that specified in subdivision four of this section.'
 
 
 2
 Appellant Kyle, a 36-year-old heroin addict, was convicted on his plea of guilty in State Supreme Court, Erie County, on two counts of criminal possession of a dangerous drug in the third degree, which under New York law is a felony. He was sentenced to consecutive sentences of four years on each count. Although found after a medical examination to be an addict, Kyle was not certified for NACC care. He filed a petition under the Civil Rights Law, 42 U.S.C. 1983, in the United States District Court for the Northern District of New York, attempting to enjoin application of Section 208, subd. 4(b) under which he was sentenced to prison, and further requesting the convening of a three-judge federal court, pursuant to 28 U.S.C. 2281, to determine the constitutionality of the New York law. The district court (Harold P. Burke, Judge) held that the petition presented no substantial federal question and therefore denied the requested relief.
 
 
 3
 Appellant Smith, at the time of his arrest a 19-year-old student at Suffolk Community Collegs, was convicted in County Court, Suffolk County, of the crime of the sale of marijuana. Though, like appellant Kyle, he was found to be a narcotics addict, he was sentenced on two counts of the indictment to prison for a mandatory term of seven to fifteen years on each count, the sentences to run concurrently. The conviction was affirmed on appeal by the Appellate Division, Second Department,[2] and leave to appeal to the New York Court of Appeals was denied. Before the decision of the Appellate Division, Smith filed a civil rights action under section 1983 in the United States District Court for the Southern District of New York, contesting the constitutionality of the law under which he was sentenced to prison, seeking the issuance of an injunction and the convening of a three-judge federal court. The State moved before Judge Charles H. Tenney to dismiss the section 1983 action on the ground that it was really in the nature of an application for habeas corpus and appellant had failed to exhaust his state remedies, required by 28 U.S.C. 2254(b). This motion was granted. The motion to convene a three-judge court was denied by Judge Walter R. Mansfield, who ruled that appellant Smith had failed to raise a substantial question of federal constitutional law.
 
 
 4
 At the outset, we note the existence of serious questions of federal jurisdiction in both cases. It does not appear that appellant Kyle appealed his conviction in the state court, and although appellant Smith did appeal, it is unclear whether he raised the same constitutional issues in the state courts which he attempts to raise in federal court, a requirement of exhaustion in habeas corpus cases.[3]
 
 
 5
 Appellants argue that the relief sought is not in the nature of habeas corpus, since they are not challenging the authority of the State to retain them in custody, but are questioning rather the nature of the custody. We need not reach this jurisdictional issue, however, since we have concluded that no substantial constitutional issue has been presented by appellants' challenge to either section 208, subd. 4(b) or section 208, subd. 5 of New York's Mental Hygiene Law, and therefore there is no need to convene a three-judge federal court and dismissal of the complaints was proper.
 
 
 6
 The claim is made that section 208, subd. 4(b) denies equal protection of the laws by conferring medical treatment on all convicted misdemeanants and prostitutes who are found to be addicts, but giving similar treatment to only those felons specifically designated to receive it by the sentencing judge. It is further contended that the section violates the Due Process Clause, since it provides the sentencing judge with standardless discretion to determine which felons are to receive NACC care. It is thus possible that two identically situated felons will receive different treatment, one being sentenced to prison, and the other being afforded medical care. The argument is also made that addicted felons are constitutionally entitled to treatment, and that they may not be punished for offenses compelled by their addiction. Finally, it is contended that section 208, subd. 5 of the Mental Hygiene Law denies equal protection of the laws, since it denies to addicted criminals the opportunity for a suspended sentence, an opportunity often afforded to similarly situated non-addicted criminals.
 
 
 7
 The standard to be applied in determining the necessity for the convening of a three-judge court is whether or not the constitutional claim is 'obviously without merit' or 'its unsoundness so clearly results from the previous decisions of (the Supreme Court) as to foreclose the subject.' California Water Service Co. v. City of Redding, 304 U.S. 252, 255, 58 S.Ct. 865, 82 L.Ed. 1323 (1938) (per curiam). Although there exists no specific Supreme Court decision foreclosing the constitutional challenges presented here, established constitutional principles, as recently underscored by the Supreme Court, demonstrate the appellants' claims are, in fact, 'obviously without merit.'
 
 I. EQUAL PROTECTION OF THE LAWS
 
 8
 In enacting the broad statute of which section 208, subd. 4(b) is a part, the State Legislature recognized that '(a) comprehensive program of compulsory treatment of narcotic addicts is essential to the protection and promotion of the health and welfare of the inhabitants of the state * * *.'[4] 'Experience has demonstrated that narcotic addicts can be rehabilitated and returned to useful lives only through extended periods of treatment in a controlled environment,' the State concluded, and therefore it was decided 'to provide a comprehensive program of human renewal of narcotic addicts in rehabilitation centers and aftercare programs.'[5]
 
 
 9
 The fact that felons are not assured of treatment, however, causes appellants to question the comprehensiveness of the program. It is argued that often the distinctions between felonies and misdemeanors are trivial or arbitrary, and that in any case an addicted felon is just as much in need of medical treatment as is an addicted misdemeanant. It is therefore contended that the distinction imposed by section 208, subd. 4(b) is wholly arbitrary and capricious.
 
 
 10
 Though state laws which have no rational basis whatsoever for the classifications imposed may be held to violate the Equal Protection Clause, in situations where the Equal Protection claim is one of arbitrariness, rather than intentional and invidious discrimination against a particular racial, religious, ethnic, social or political group, the state is permitted considerably greater latitude in distributing its resources and administering its laws. Cf. James v. Valtierra, 402 U.S. 137, 91 S.Ct. 1331, 1333, 28 L.Ed.2d 678 (1971). A state is often required by reason of administrative or judicial necessity to draw fine distinctions. For example, the exact age at which an individual is qualified to vote. Oregon v. Mitchell, 400 U.S. 112, 91 S.Ct. 260, 27 L.Ed.2d 272 (1970).[6]
 
 
 11
 New York's resources for purposes of narcotics treatment are limited. Thus the State must attempt to allocate these resources in the most reasonable and fair way within its ability. We should not force New York State to discontinue its entire program of criminal narcotics rehabilitation because it is unable to provide treatment to all those who might benefit by it. The State might reasonably have concluded that felons, who are ordinarily more serious offenders, as a rule, would not benefit as greatly by this form of treatment as might lesser criminals. Provision was nevertheless made for treatment of felons in situations where the sentencing judge determines it would be beneficial or desirable.
 
 
 12
 The fact that the State's resources are limited would, of course, not justify a program whereby whites were given treatment denied to blacks, or whereby blue-eyed people were given treatment denied to brown-eyed. However, where the state has made a legitimate effort to allocate its resources in a reasonable manner, without any evidence of an intent to discriminate on the basis of invidious grounds, the courts will not intervene.
 
 
 13
 Dandridge v. Williams, 397 U.S. 471, 90 S.Ct. 1153, 25 L.Ed.2d 491 (1970) supports this conclusion. In that case the Court upheld the method employed by the State of Maryland in the administration of its public welfare program 'to reconcile the demands of its needy citizens with the finite resources available to meet those demands.' 397 U.S. at 472, 90 S.Ct. at 1155. The State imposed an upper limit of $250 per month in certain counties and Baltimore City, and of $240 per month elsewhere, regardless of the size of the family and its actual need. In upholding the constitutionality stitutionality of this practice, the Court noted:
 
 
 14
 'The Equal Protection Clause does not require that a State must choose between attacking every aspect of a problem or not attacking the problem at all. It is enough that the State's action be rationally based and free from invidious discrimination.' 397 U.S. at 486-487, 90 S.Ct. at 1162.
 
 
 15
 Just as 'the intractable economic, social, and even philosophical problems presented by public welfare assistance programs are not the business of this court,' (397 U.S. at 487, 90 S.Ct. at 1163) so, too, determination of the nature of treatment of addicted criminals, which presents all the problems mentioned in regard to public assistance with the significant addition of medical complexities, is beyond the scope of our legitimate concern, absent a showing of truly invidious discrimination.
 
 
 16
 Appellants place great reliance on a recent en banc decision of the District of Columbia Circuit, Watson v. United States, 439 F.2d 442 (D.C.Cir.1970), in which the federal provision[7] barring criminal defendants who had been convicted of two prior felonies from receiving narcotics treatment was held to violate the Equal Protection Clause. Regardless of whether we agree with Watson, however, we note that there those convicted or two prior felonies were absolutely barred from receiving treatment as addicts, whereas under the New York scheme the sentencing judge has the power to afford convicted felons the care of the NACC, if he feels it is called for under the facts of the case.
 
 II. DENIAL OF DUE PROCESS
 
 17
 The very fact that the sentencing judge has this discretionary power causes appellants to argue that section 208, subd. 4(b) violates the Due Process Clause of the Fourteenth Amendment. That the State need not have enacted its narcotics rehabilitation program does not mean that once it is established the State may determine who is to receive its benefits in an unfair manner. Goldberg v. Kelly, 397 U.S. 254, 90 S.Ct. 1011, 25 L.Ed.2d 287 (1970); Escalera v. New York City Housing Authority, 425 F.2d 853 (2d Cir. 1970), cert. denied, 400 U.S. 853, 91 S.Ct. 54, 27 L.Ed.2d 91. See generally, Van Alstyne, 'The Demise of the Right-Privilege Distinction in Constitutional Law,' 81 Harv.L.Rev. 1439 (1968).
 
 
 18
 A sentencing judge, however, has always been afforded broad discretion in determining sentence and the existence of this discretion has not been thought to present constitutional difficulties. See Unites States v. Rosenberg, 195 F.2d 583, 604 (2d Cir.), cert. denied, 344 U.S. 838, 73 S.Ct. 20, 97 L.Ed. 652 (1952). If it is 'impossible to say that committing to the untramelled discretion of the jury the power to pronounce life or death in capital cases is offensive to anything in the Constitution,' as the Supreme Court has recently held,[8] the Due Process Clause is not violated by permitting a trial judge to exercise his discretion, albeit without specific standards to guide him, to provide hopefully rehabilitative medical treatment to felons he finds likely to benefit by this type of sentence and not to others.
 
 
 19
 III. RIGHT TO TREATMENT AND PUNISHMENT FOR DRUG-RELATED CRIMES
 
 
 20
 Appellant Kyle argues he may not constitutionally be imprisoned without receiving treatment. Appellant Smith argues on the basis of Robinson v. California, 370 U.S. 660, 82 S.Ct. 1417, 8 L.Ed.2d 758 (1962) that he may not be punished for what he calls 'narcoticsrelated offenses.'
 
 
 21
 The claim to a constitutional right to treatment for narcotics addiction has no basis in either the provisions of the Constitution or the decisions of the courts, and we need not give it serious consideration. Nor does the contention that under Robinson a defendant may not be punished for narcoticsrelated offenses raise a substantial federal question. The Supreme Court held in Robinson that punishment for the mere status of narcotics addiction violates the Eighth Amendment's prohibition of cruel and unusual treatment. That decision was in no way intended to stand for the proposition that those who affirmatively commit crimes because of their condition may not be punished. 'The entire thrust of Robinson's interpretation of the Cruel and Unusual Punishment Clause is that criminal penalties may be inflicted only if the accused has committed some act, has engaged in some behavior, which society has an interest in preventing * * *. It thus does not deal with the question of whether certain conduct cannot constitutionally be punished because it is, in some sense, 'involuntary' or 'occasioned by a compulsion." Powell v. Texas, 392 U.S. 514, 533, 88 S.Ct. 2145, 2154, 20 L.Ed.2d 1254 (1968).
 
 
 22
 In recent years social scientists have come to support the thesis that the anti-social actions of many individuals are to a large extent heavily influenced, or even determined by, elements in their backgrounds beyond their control. Yet if every criminal act which was the result in some degree of a socially developed compulsion was beyond society's control, the interests and safety of the public would be seriouly threatened. An addict who commits an affirmative illegal act, as distinguished from one whose only anti-social behavior is the mere presence of his addiction, may be constitutionally punished.
 
 
 23
 Appellant Smith makes the final claim that section 208, subd. 5 of the Mental Hygiene Law, in denying him the opportunity to obtain a suspended sentence because of his state of addiction, denies him the equal protection of the laws. The distinction drawn between addicted and non-addicted criminals, however, is in no sense an irrational one. The State might reasonably decide that the danger to society from one who is addicted to narcotics and therefore must find some way to maintain his expensive habit is inherently greater than the danger presented by a criminal who does not have this problem. The challenge to section 208, subd. 5 raises no substantial issue of federal law.
 
 
 24
 The decisions of the district courts in both these cases are affirmed.
 
 IRVING R. KAUFMAN, Circuit Judge (concurring):
 
 25
 I agree and join in all of the opinion, with two exceptions.
 
 
 26
 First, I cannot find 'obviously without merit' appellant Smith's contention that New York Mental Hygiene Law 208, subd. 5 contemplates and permits the unconstitutional punishment of his condition of narcotics addiction, proscribed by Robinson v. California, 370 U.S. 660, 82 S.Ct. 1417, 8 L.Ed.2d 758 (1962), by denying only to addicts the possibility of a suspended sentence. Although the majority recognizes and properly apples the Robinson principle to Smith's claim that he may not be punished for narcotics-related offenses, it ignores Robinson in discussing the challenge to 208, subd. 5 and relies instead on the unassailable proposition that the distinction made in that provision is not 'irrational.' Neither would it be 'irrational' to punish addicts in the first instance because of their addiction on the very ground cited by the majority here, that addicts are far more crime-prone as a class than are others. But due process does not tolerate punishing people just because they are afflicted with insanity, feeblemindedness, or addiction. This is the teaching of Robinson. I cannot see how the practice sanctioned by 208, subd. 5 is distinguishable from the practice proscribed by Robinson. Perhaps members of a three-judge district court would be able to thread their way pasy this objection, buy it surely raises a 'substantial' issue.
 
 
 27
 I concur with the result reached by the majority, however, because I believe that these applications are essentially habeas corpus petitions, requiring exhaustion of state remedies, 28 U.S.C. 2254(b). Each petitioner is "challenging the validity of his sentence with the ultimate object of obtainining release' from prison, Hancock v. Avery, 301 F.Supp. 786, 791 (M.D.Tenn.1969),' Sostre v. McGinnis, 442 F.2d 178, 182 (2d Cir. 1971) (holding exhaustion unnecessary as to complaint directed against internal prison discipline). Petitioners are not seeking release only incidentally to a claim that actions of prison, parole, or other correctional authorities are illegal. See Damico v. California, 389 U.S. 416, 88 S.Ct. 526, 19 L.Ed.2d 647 (1967); Hancock v. Avery, 301 F.Supp. 786 (M.D.Tenn.1969); Edwards v. Schmidt, 321 F.Supp. 68 (W.D.Wis.1971). It is the historic and essential function of the habeas corpus petition to afford relief from confinement unlawfully inposed. See Developments in the Law-- Federal Habeas Corpus, 83 Harv.L.Rev. 1038, 1042-45. Thus, there is no reason for denying their natural meaning to the words of 28 U.S.C. 2254, that a writ of habeas corpus may be entertained by a federal court 'in behalf of a person in custody pursuant to the judgment of a State court * * * on the ground that he is in custody in violation of the Constitution * * *.' Nor is it of any moment that part of the remedy sought by petitioners is not outright freedom from all confinement, but rather transfer from a state penal institution to another institution for treatment of their addiction. Outright freedom is not the only remedy available by a writ of habeas corpus. We know, for example, that the writ has been allowed to test the validity of one of several consecutive sentences, not yet being served where the petitioner's eligibility for parole turned on the outcome, Peyton v. Rowe, 391 U.S. 54, 88 S.Ct. 1549, 20 L.Ed.2d 426 (1968). The Supreme Court long ago ruled that a petitioner seeking release because he had been confined to the wrong penitentiary could bring his claim via habeas. In re Bonner, 151 U.S. 242, 14 S.Ct. 323, 38 L.Ed. 149 (1894).
 
 
 28
 Moreover, the exhaustion requirement 'preserves orderly administration of state judicial business, preventing the interruption of state adjudication by federal habeas proceedings' and affords to state courts primary responsibility for conforming their own proceedings to constitutional strictures. Developments in the Law-- Federal Habeas Corpus, supra, at 1094. Unlike a prisoner attacking, for example, a prison disciplinary rule, the petitioner who challenges the validity of the judicial process by which he was incarcerated need not initiate a collateral state judicial proceeding to raise his claim. He may bring it in the very judicial proceeding leading to his confinement, although he may also resort to state collateral attack. The exhaustion requirement encourages the defendant to bring all his claims to the illegality of the initial proceeding leading to his incarceration in that very proceeding, and thus promotes judicial economy and efficiency. The exhaustion requirement is also justified by other considerations of federal-state comity, id. 1094-05, each of which would be served by regarding the present applications as habeas corpus petitions.
 
 
 29
 Of course, the one claim that I believe may have merit, Smith's objection to 208, subd. 5, is a classic instance of a suit appropriately brought by habeas corpus, and because Smith has not litigated his claim in the New York courts, I would deny his application for a three-judge court. But the exhaustion requirement also supplies an alternative ground for the result reached by the majority on the merits of petitioner's other auguments, with which result and reasoning I am in full accord.
 
 
 
 [1]
 L.1966, ch. 192
 The wording of section 208, subd. 4 is as follows: 4. A person who is found to be a narcotic addict pursuant to this section and who has pleaded guilty to or has been found guilty of a felony, misdemeanor or the offense of prostitution, shall be sentenced as follows: a. Where sentence is to be imposed for a misdemeanor or for the offense of prostitution, the defendant shall be certified to the care and custody of the commission for an indefinite period which shall commence on the date the order of certification is made and shall terminate upon the first to occur of (1) the discharge of such defendant by the commission as rehabilitated, or (2) the expirations of a period of thirty-six months from the date such period commenced. b. Where sentence is to be imposed for a felony, the court, in its discretion, may either (1) impose an indeterminate sentence to an institution under the jurisdiction of the state department of correction in accordance with the provisions of the penal law applicable to sentencing for such felong (except as otherwise provided in subdivision five of this section), or (2) certify such defendant to the care and custody of the commission for an indefinite period which shall commence on the date the order of certification is made and shall terminate upon the first to occur of (i) the discharge of such defendant by the commission as rehabilitated, or (ii) the expiration of a period of sixty months from the date suchperiod commenced.
 
 
 [2]
 People v. Smith, 35 A.D.2d 911, 317 N.Y.S.2d 261 (2d Dept.1970)
 
 
 [3]
 'It is not cnough that the petitioner has been to state courts; he must have presented there the same claim he seeks to advance in his federal habeas petition.' 'Developments in the Law-- Federal Habeas Corpus,' 83 Harv.L.Rev. 1038, 1095 (1970)
 
 
 [4]
 New York Mental Hygiene Law 200
 
 
 [5]
 Id
 
 
 [6]
 Even those who argued that the state had no such inherent power did not rely on the arbitrariness of fine-line distinction, since the same argument could be directed to a distinction between 18 and 17 year olds
 
 
 [7]
 18 U.S.C. 4251(f)(4)
 
 
 [8]
 McGautha v. California, 402 U.S. 711, 91 S.Ct. 1454, 1467, 28 L.Ed.2d 711 (1971)