Jack **YBARRA**, also known as Isaias M. Ybarra, individually and as a member of the Confederacion de la Raza Unida, Jose Vasquez, individually and as president of the Confederacion de la Raza Unida, and Confederacion de la Raza Unida, an unincorporated association, all on behalf of themselves and all those similarly situated, Plaintiffs,

v.

The city of the **TOWN OF LOS ALTOS HILLS**, a municipal corporation, et al., Defendants.

No. C–70 2684.

United States District Court, N. D. California.

Feb. 15, 1973.

744

Grace M. Kubota, Stephen Manley, Joel G. Schwartz, Community Legal Services, San Jose, Cal., for plaintiffs.

Robin D. Faisant, Palo Alto, Cal., Robert T. Anderson, Sturgis, Den-Dulk, Douglass & Anderson, Oakland, Cal., for defendants.

## FINDINGS OF FACT, CONCLUSIONS OF LAW AND JUDGMENT

WEIGEL, District Judge.

Plaintiffs Jack Ybarra and Jose Vasquez are of Mexican descent and members (plaintiff Vasquez is president) of plaintiff Confederacion de la Raza Unida. The Confederacion is "a non-profit, unincorporated coalition of Mexican-American organizations in the County of Santa Clara, State of California."[1]

The Confederacion holds options to purchase land in the city of Los Altos Hills, Santa Clara County, California.[2] The options are subject to the Confederacion's obtaining zoning for "multifamily" dwellings and obtaining approval of the Federal Housing Administration for a low-income multifamily housing project under Section 236 of the National Housing Act of 1937, 50 Stat. 888 as amended, 42 U.S.C. § 1401 et seq.[3]

Plaintiffs Ybarra and Vasquez allege that their respective incomes are low enough to qualify them for residence in the proposed housing project. Plaintiff Confederacion desires to go forward

---

1. Complaint, page 2, lines 3–5.

2. The legal name of the city appears to be Town of Los Altos Hills. For convenience, it will often hereafter be referred to as the city of Los Altos Hills or simply as Los Altos Hills.

3. A program manager for the Federal Housing Administration testified that the optioned property was suitable for such approval if the proper zoning were first obtained.

with it and is prevented only by a zoning ordinance of Los Altos Hills.

The zoning ordinance provides, *inter alia*, that no lot shall be smaller in size than one acre and that only "one primary dwelling unit" shall be allowed upon any one lot. Relevant provisions of the ordinance, which thus preclude multi-unit housing, are set out in a footnote.[4]

The defendants are the city of Los Altos Hills, its acting city manager and the members of its governing council.

Plaintiffs, claiming that the zoning ordinance denies their constitutional rights, rely principally upon a federal statute, 42 U.S.C. § 1983, which declares:

"Every person who, under color of any statute, ordinance, regulation, custom, or usage, of any State or Territory, subjects, or causes to be subjected, any citizen of the United States or other person within the jurisdiction thereof to the deprivation of any rights, privileges, or immunities secured by the Constitution and laws, shall be liable to the party injured in an action at law, suit in equity, or other proper proceeding for redress."

Plaintiffs allege that venue and jurisdiction for consideration of their claims lie in this court under other federal statutes, *viz.*, 28 U.S.C. § 1331 (amount in controversy exceeds the value of $10,000), 28 U.S.C. § 1343(3) (federal district courts have original jurisdiction of civil actions to redress deprivation of constitutional rights under color of state law) and 28 U.S.C. § 2201 (in any case of actual controversy, any court of the United States may declare the rights of any interested person seeking such declaration).

The redress sought by plaintiffs is for injunctive and declaratory relief. They do not ask for monetary damages.

Before reaching the merits, decision should be made on the claim that the defendant city of Los Altos Hills is not a person within the meaning of 42 U.S.C. § 1983. This contention is bottomed upon Monroe v. Pape, 365 U.S. 167, 81 S.Ct. 473, 5 L.Ed.2d 492 (1961), which held that the City of Chicago could not be sued for monetary damages under the statute. The authorities are in conflict as to whether a city can be sued under the statute for injunctive relief. *Compare*, for example, Dailey v. City of Lawton, Oklahoma, 425 F.2d 1037 (10th Cir. 1970), *with* Deane Hill Country Club, Inc. v. City of Knoxville, 379 F.2d 321 (6th Cir.), cert. denied, 389 U.S. 975, 88 S.Ct. 476, 19 L.Ed.2d 467 (1967). The precise question has

---

4.  8:10 *Lot Area.* The lot area regulations set forth below are minimum requirements for lots used or intended to be used for dwellings. Other ordinances of the Town may impose standards requiring substantially larger lots thereby reducing the number of lots possible in a subdivision.

   (A) *Minimum Lot Area.* No lot shall have a net area less than 43,560 square feet and no lot shall be occupied by more than one primary dwelling unit.

   \*       \*       \*       \*       \*

   5:30 *Conditional Uses and Structures*

   .   .   .   .

   c. *House Trailers.* Trailers may not be used as primary or secondary dwellings. A temporary permit for use as a dwelling for not more than thirty (30) days in any calendar year may be issued by the City Clerk upon certification that the use pursuant thereto shall be by a bona fide non-paying guest, but in all events applicable to setback requirements shall be strictly enforced.

   5:30 Conditional uses and Structures

   .   .   .   .

   k. *Secondary Dwellings.* Subject to applicable provisions of this or other ordinances, there shall be permitted one (1) secondary dwelling on each parcel of land in one (1) ownership, which is of at least one (1) acre in net area. Where any such parcel contains less than one and ninety-nine hundredths (1.99) acres in net area, no kitchen plumbing or other kitchen facilities of any kind shall be maintained or installed in any secondary dwelling, and such dwelling shall be used only as a temporary residence for bona fide non-paying guests of the residents of the dwelling on the same parcel.

not been decided in this circuit. Diamond v. Pitchess, 411 F.2d 565 (9th Cir. 1969) held that a civil rights suit for damages *and* injunction would not lie against the State of California nor the County of Los Angeles. Since the opinion of the Court cited only Monroe v. Pape, *supra,* and Dodd v. Spokane County, Washington, 393 F.2d 330 (9th Cir. 1968), in both of which cases plaintiffs sought only damages, and since there is nothing to show that the Court considered the question of a case seeking injunctive relief only, *Diamond* does not foreclose a different result where no damages are sought. Therefore, while the question is not free from doubt in this Circuit, the better view, more consistent with the salient purposes of 42 U.S.C. § 1983, would appear to be that the restriction in Monroe v. Pape, *supra,* is limited to actions for damages. To hold that a governmental agency may not be saddled with financial debt for past violation of the federal statute does not require holding that there can be no remedy against continuing violations. The Court finds no validity in other claims made on jurisdictional and procedural grounds.

This brings us to consideration of the case on the evidence presented by trial to the Court without a jury.

The city of Los Altos Hills is situated in the southern part of the San Francisco peninsula. One of fifteen incorporated cities in the County of Santa Clara, Los Altos Hills has a population of approximately seven thousand people. The city limits encompass ten square miles. The County has a population of over one million people and a territory of some one thousand three hundred and twelve square miles. Much of the county is urban. Much of it is industrial. Throughout the County, there are areas zoned, or available for zoning, for low-cost housing.

Los Altos Hills is a rural, residential community with virtually no commercial or industrial development. Its residents depend primarily on neighboring cities for employment opportunities, medical and dental services, cultural facilities, shopping and the like. Very few persons are employed in Los Altos Hills.

The city supplies few public services or facilities. Police and fire protection are had under contract with the County of Santa Clara, neighboring cities or special districts. Private septic tanks account for most sewage disposal. There are no city recreational facilities. There is no municipal transportation system. The city provides minimal street maintenance for the roads serving the city which are narrow and winding. The terrain is hilly, ranging from 100 to 1000 feet in elevation. There are a number of heavily wooded areas. There are few low income residents in Los Altos Hills. There is no substandard housing.

The General Plan of the Town of Los Altos Hills was adopted in 1959 and states its purposes as follows:

It will be an official recording of the purpose and intention of the citizens of Los Altos Hills to preserve the rural-residential character of the entire area, and to make reasonable provision for circulation and for the recreational and other needs of the community, while preventing developments which would impose undue burdens upon its resources.

The zoning ordinance challenged by plaintiffs declares its purposes as follows (Section I, Subsection 1:20, City Council Ordinance No. 78):

*Purpose.* This zoning ordinance is adopted to protect and guide the growth and expansion of the Town of Los Altos Hills in an orderly manner, consistent with the General Plan and true to the rural residential character of the community; to provide for space deemed necessary to advance the welfare of the public in assuring adequate light, pure air, safety from conflagration and disaster; to promote the smooth flow of traffic; to provide adequate residential off-street parking facilities; to protect the community against excessive storm water run-off,

soil erosion, earth movement, earthquake and other geologic hazards; to minimize silting of drains and drainage channels; to preserve and enhance the natural beauty of the community; and to solve other conditions arising from concentration of the population.

The zoning limitations that no lot shall be smaller than one acre and that only one primary dwelling unit may be upon any one lot—these limitations do serve the declared purposes. At the same time, it is also clear from the evidence that they have the practical effect or impact of precluding poor persons from renting or owning housing in Los Altos Hills and of preventing the low-income housing project sought by plaintiffs.

While not articulated in exactly these terms by the parties, this case presents three questions as to violation of the Constitution of the United States.

1. Does the challenged zoning ordinance violate the Supremacy Clause?

2. Does the ordinance deprive the Confederacion of property rights in its option without due process of law?

3. Does the ordinance deny plaintiffs equal protection of the laws by its practical effect in prohibiting low-cost housing anywhere within the entire city limits of Los Altos Hills?

Based upon the facts, conditions and law now prevailing, including the fact that there are areas throughout Santa Clara County where zoning does not preclude low-cost housing, each question must be answered in the negative.

### Concerning the Supremacy Clause

Plaintiffs claim that the zoning ordinance frustrates the purpose of the National Housing Act, therefore violating the Supremacy Clause of the Constitution of the United States found in Article VI., reading as follows:

This Constitution, and the Laws of the United States which shall be made in Pursuance thereof; and all Treaties made, or which shall be made, under the Authority of the United States, shall be the supreme Law of the Land; and the Judges in every State shall be bound thereby, any Thing in the Constitution or Laws of any State to the Contrary notwithstanding.

The National Housing Act provides for federal assistance to local governments or other non-profit sponsors for the construction of low and moderate income housing. In James v. Valtierra, 402 U.S. 137, 91 S.Ct. 1331, 28 L.Ed.2d 678 (1971), the Supreme Court had before it a provision of the Constitution of the State of California that no low rent housing project could be developed by a state public body until approved by voters of the community involved. In rejecting there the same Supremacy Clause argument made here, the Supreme Court found that the federal statute does not require local governments to accept federal assistance nor invalidate local referenda deciding whether the aid should be accepted. *James*, in other words, indicates that Congress, so far as the National Housing Act is concerned, intended to defer to the judgment and priorities of local governments with regard to the desirability of low-income housing.[5]

If, in the future, Congress should find a valid national interest which it can constitutionally assert in requiring all cities to permit at least some low-cost housing, the question would be different. At this time, there is no such Congressional enactment and, therefore, plaintiffs' claims based upon the Supremacy Clause cannot be sustained.

---

5. The refusal of the Department of Housing and Urban Development to consider plaintiffs' application until the land should become zoned for multi-unit housing indicates that federal Agency's interpretation of the statute to be in accord.

## Concerning Due Process

The Fourteenth Amendment to the Constitution of the United States declares:

> . . . nor shall any State deprive any person of . . . property, without due process of law. . . .

■ The option held by the Confederacion is of value only if it can get zoning to permit multifamily dwellings on the property under option. The challenged ordinance, by prohibiting such zoning, destroys that value and, if it does so without due process of law, is unconstitutional as to the Confederacion.[6]

■■ The due process question may be disposed of quite readily. While the case law dealing with zoning ordinances is at once confusing, conflicting and developing, two principles are reasonably well settled. The first is that a presumption of constitutionality attends zoning ordinances under attack on due process grounds. The second is that the requirements of due process are met unless the ordinance is shown to be clearly arbitrary and unreasonable.[7] The leading case is Village of Euclid v. Ambler Realty Co., 272 U.S. 365, 47 S.Ct. 114, 71 L.Ed. 303 (1926).[8] A recent case in this Circuit applies the same due process test. *See* Southern Alameda Spanish Speaking Organization v. City of Union City, California, 424 F.2d 291, 294 (9th Cir. 1970).

■ The due process attack on the Los Altos Hills ordinance must fall because its purposes are neither unreasonable nor arbitrary and because the operative provisions of the ordinance are reasonably calculated to effectuate those purposes.

This brings us to the closer question as to whether or not the ordinance deprives plaintiffs of equal protection of the laws.

## Concerning Equal Protection

The Fourteenth Amendment declares that no state shall:

> . . . deny to any person within its jurisdiction the equal protection of the laws.

In the case at bar, the evidence makes it clear that the practical impact of the challenged ordinance denies housing in Los Altos Hills to financially poor persons with low incomes, including the individual plaintiffs. Indeed, defendants stipulated, though reluctantly, that it would be very difficult, if not impossible, for persons of low income to obtain housing in that city.

This impact of the ordinance gives rise to two claims. One is that it discriminates unlawfully against the poor; the other, that it discriminates unlawfully on the basis of race. The latter will be considered first.

■ Plaintiffs' claim of racial discrimination, ingenious but unsound, runs this way: The effect of the ordi-

---

6. If the option operates to place the Confederacion in the shoes of the optioner in attacking the ordinance, the latter *is a* "taking" of the property owner's right to sell his property on terms he wishes—a clear deprivation. For the purposes of this case, it is assumed that the option does so operate.

7. Plaintiffs claim that the Los Altos Hills ordinance violates due process because it it arbitrary and unreasonable in excluding certain segments of the population (those poor and of Mexican descent) in conflict with a paramount public interest in housing for all. This claim is better bottomed on equal protection and will be considered under that heading.

8. The confusing state of zoning decisions is well illustrated by two Pennsylvania cases. In National Land and Investment Company v. Kohn, 419 Pa. 504, 215 A.2d 597 (1965) and in Appeal of Kit-Mar Builders, Inc., 439 Pa. 466, 268 A.2d 765 (1970), minimum size lot requirements (4 acres and 2 acres in the respective cases) were struck down. In *Kit-Mar*, there were judicial expressions suggesting that the presumption is against the constitutionality of zoning laws. Indeed, zoning appears in these decisions to be a suspect class of laws. *See, e. g.,* the first sentence of the concluding paragraph of the concurring opinion in *Kit-Mar*, 268 A.2d 765 at 772.

nance denies the poor low-cost housing in Los Altos Hills; a large proportion of the poor in Santa Clara County is of Mexican descent; therefore, the ordinance discriminates against those of that ancestry. The trouble with the argument is that the effect on the poor of Mexican descent is due to their relative poverty and not their ancestry. That effect of the ordinance applies to the poor of all races, colors and creeds. Moreover, the claim of racial discrimination cannot stand in the face of the fact that neither the terms nor impact of the ordinance in any way bars those of adequate means, including persons of Mexican lineage, from housing in Los Altos Hills. *See* James v. Valtierra, *supra*, in which, despite evidence showing a close statistical relationship between minorities and the poor, the Supreme Court held that the challenged state action was not aimed at any racial minority.

Turning now to the claim that the impact of the ordinance is unlawful because it discriminates against the poor by denying them housing in Los Altos Hills: In the light of court decisions treating legislation discriminating against the poor as "suspect" and not valid unless justified by a "compelling" state interest, this claim must be carefully considered.[9] There are many cases in which legislative action resulting in discrimination against the poor (or favoring the wealthy) has been stricken down as violative of the Fourteenth Amendment prohibition against denial of equal protection. For example: In Griffin v. Illinois, 351 U.S. 12, 76 S.Ct. 585, 100 L.Ed. 891 (1956), the Supreme Court required that indigent defendants must be provided free transcripts to effectuate their statutory rights to appeal; in Douglas v. California, 372 U.S. 353, 83 S.Ct. 814, 9 L.Ed.2d 811 (1963), the Court required provision of free counsel for appeals of indigent defendants; in Harper v. Virginia Board of Elections, 383 U.S. 663, 86 S.Ct. 1079, 16

L.Ed.2d 169 (1966), the Court struck down a poll tax; and in Tate v. Short, 401 U.S. 395, 91 S.Ct. 668, 28 L.Ed.2d 130 (1971), the Court held that Texas could not limit punishment to payment of a fine for those able to pay and provide for imprisonment of those unable.

■ These cases show that laws which discriminate on the basis of wealth, whether *de jure* or *de facto*, and which substantially impair important interests of the poor, violate the constitutional requirements of equal protection. This calls for determination as to what, if any, important interests of the poor may be substantially impaired by the challenged ordinance of Los Altos Hills.

One of the interests, recognized by the Supreme Court as a matter of "special judicial concern", is housing. Jones v. Alfred Mayer Co., 392 U.S. 409, 88 S.Ct. 2186, 20 L.Ed.2d 1189 (1968); Reitman v. Mulkey, 387 U.S. 369, 87 S.Ct. 1627, 18 L.Ed.2d 830 (1967). The Ninth Circuit, too, has suggested that access to decent housing is an important interest. In Southern Alameda Span. Spkg. Org. v. City of Union City, *supra*, the court stated:

> They [appellants] assert that the effect of the referendum is to deny decent housing and an integrated environment to low-income residents of Union City. If, apart from voter motive, the result of this zoning by referendum is discriminatory in this fashion, in our view a substantial constitutional question is presented. At 295, of 424 F.2d.

■ Perhaps an even more important interest of the poor is opportunity for upward social and economic mobility, i. e., for equal opportunity. Laws substantially impairing the ability of poor persons to escape their disadvantaged class should be closely scrutinized. Such laws tend to render poverty, like race, unalterable.

---

9. See 81 Yale L.J. 61 (November 1971) and 84 Harv.L.Rev. 1645 (May 1971). *See also*, Serrano v. Priest, 5 Cal.3d 584, at 597, et seq., 96 Cal.Rptr. 601, 487 P.2d 1241 (1971), and Van Dusartz v. Hatfield, 334 F.Supp. 870 (D.Minn.1971).

■ In this connection, it is urged that zoning ordinances excluding low income persons from certain areas may inhibit the poor in obtaining decent housing and thereby impair their ability to improve their status; that such ordinances should not stand if they operate to consign a city's low-income residents to substandard housing or dilapidated ghettos; that cities with abundant open space should be prevented from excluding low-income people from contiguous areas where land for adequate housing is exhausted; that a city which offers employment to low-income people, but forces them to live elsewhere, may thereby effectively deprive them of their employment or the full reasonable fruits of it; that the lack or cost of transportation may relegate them to a lesser employment; and that since nothing is more crucial to upward mobility than adequate and progressively better employment, a zoning ordinance adversely effecting job opportunities would bear a heavy burden of justification.[10]

■ None of these characteristics attend the Los Altos Hills ordinance. Although it does, for all practical purposes, exclude low-income persons from residence in that community, it does not substantially impair any important interest of the poor. It does not operate to deny them the opportunity for low-cost housing in convenient and decent locations nearby. Since Los Altos Hills itself has virtually no low-income residents, it is not neglecting any housing responsibility to its own. The city has no industry, has an insubstantial amount of commercial business and thus offers little or no employment opportunity to low-income persons. Therefore, it need not zone to insure the availability of low-income housing for resident low-income workers.

It is true that the ordinance operates to shield property owners in Los Altos Hills against whatever increased tax burdens might follow from low-cost housing. It is also true that the ordinance shields residents of that community against loss of such amenities as spacious grounds, uncrowded streets, rural atmosphere and the like. It may be argued that the effect of the ordinance is to provide these advantages to residents of Los Altos Hills at the expense of Santa Clara County residents outside of Los Altos Hills. Had the evidence established (as it did not) that these consequences were forced upon the latter against their wills as a direct, proximate and unavoidable consequence of the Los Altos Hills ordinance and had any such resident sought relief in this court (as none did), the case would be different and so might the result.

10. The dynamics giving rise to the problems stated in these arguments are well described as follows:

. . . The more affluent suburban towns are eager to preserve their social status and to keep their tax rates low; for these purposes many are attempting to use land development controls to keep out the poor, who would contribute little to tax resources and would require considerable public outlays for education and welfare programs. At the same time, many central cities are trying to reverse the population movements that have left them with concentrations of the poor, high service demands, and a stagnant tax base. Their efforts to retain or win back middle-income families often lead to development programs that eliminate areas of low-cost housing without providing reasonable alternatives that the occupants can afford. Together, these policies threaten to victimize those who are already disadvantaged by displacing them from their homes in central cities and making it difficult for them to find places to live in the suburbs. Frieden: The Legal Role In Urban Development, 12 U.C. L.A.L.Rev. 856, 861.

As the problems of urban sprawl become more critical, the demand for remedial action by legislative bodies—and failing that, by the courts—is bound to increase. The Planning and Zoning Law of the State of California (Government Code § 65000, et seq.), which looks toward solutions for urban-suburban housing problems, does not validate the constitutional claims made by plaintiffs in this case.

Finally, it must be observed that the Los Altos Hills ordinance prevents luxurious high rise or other such development requiring multi-unit housing just as much as it prevents low-cost multi-unit housing. The wealthy individual desiring, for example, the conveniences of an apartment with freedom from the upkeep of a house, freedom from maintenance of grounds and freedom from other like aspects of caring for single family dwellings—that wealthy individual, no less than the poor, is denied multi-unit housing in Los Altos Hills. This saliently distinguishes the ordinance from those forbidden legislative enactments which deny rights and privileges solely to the poor.

On the facts and under the law as they stand today, the city of Los Altos Hills is not required to show a compelling interest to sustain its ordinance against the present attack. It need show only, as it has, that the ordinance is not arbitrary and unreasonable in purpose or effect.

The foregoing constitutes the Court's Findings of Fact and Conclusions of Law. Based upon them, Judgment is hereby ordered for defendants.