**SISTERS OF PROVIDENCE OF ST. MARY OF the WOODS et al., Plaintiffs,**

v.

**CITY OF EVANSTON et al., Defendants.**

**No. 71 C 1045.**

United States District Court, N. D. Illinois, E. D.

Oct. 28, 1971.

**398**

———◆———

Richard F. Babcock, R. Marlin Smith, Gerald Muller, of Ross, Hardies, O'Keefe, Babcock & Parsons, Chicago, Ill., for plaintiffs.

Jack Siegel, Corp. Counsel, Evanston, Ill., for defendants.

## MEMORANDUM OPINION

## MOTION TO DISMISS

MAROVITZ, District Judge.

This is a multi-faceted suit, involving several plaintiffs and plaintiff organizations who allege that their civil rights under various Federal Statutes and the Constitution of the United States have been violated and that the property rights guaranteed by the Constitutions of the United States and Illinois have been similarly violated. This suit is an outgrowth of the Evanston City Council's refusal to rezone property in a white neighborhood from a lower density R5 zone permitting a maximum of 157 units to a higher R5A zone which would allow the building of the 360 unit development proposed by plaintiff Interaction, a major part of which will be Federally subsidized low and moderate income housing.

Plaintiffs are the Sisters of Providence (Sisters) the present owner of the tract of land; Interaction, Inc. (Interaction) a limited corporation formed for the purpose of increasing the supply of low and moderate income housing in the Chicago area, who sought to purchase the property owned by Sisters provided that higher density zoning was obtained; Evanston Neighbors at Work (Neighbors), a not-for-profit corporation formed for the purpose of organizing low-and-moderate income housing in Evanston; Evanston Housing Center (Center) a not-for-profit association with goals similar to Neighbors; and individual plaintiffs, Debbie Higgins, Donna Hyde, and Hattie Taylor, black residents of Evanston who live in substandard housing, are prospective tenants for the low and moderate income housing planned by Interaction, and who are bringing suit for the class of all individuals similarly situated.

The case is presently before this Court on defendant's motion to dismiss based on lack of jurisdiction, standing problems as to each plaintiff, lack of jurisdictional amount, failure to state a cause of action under the various constitutional amendments and statutes cited and failure to exhaust administrative remedies.

### I.

Plaintiff Sisters is the owner of an approximately nine-acre tract of land in the City of Evanston and until June 1970 had operated Marywood High School on the property in question. On July 1, 1970, Sisters entered into a contract for sale of this property to Interaction for $1.9 million upon the condition that the property be rezoned from the lower density R5 permitting a maximum of 157 units to a higher density R5A designation, or that construction of a 360-unit housing development be otherwise permitted by the Evanston City Council. (Complaint p. 10). Interaction proposes to build a housing development of 360 units, with 200 of these units subsidized for low and moderate income families and individuals under § 236 of the National Housing Act of 1968.

On August 31, 1970 Plaintiff Sisters on behalf of itself and Interaction petitioned the City Council of Evanston to rezone the subject property from *R5* General Residence District to *R5A* General Residence District. After public hearing, the Zoning Amendment Committee on February 5, 1971 recommended that the petition be denied stating that the subject property required Special or Controlled Development District regulation in order to insure adequate city control over the development. On March 25, 1971 the City Council adopted the Zoning Amendment Committee's recommendation and denied Sisters' rezoning petition by a 10–7 vote.

Plaintiffs claim that it is not economically feasible to build a low and moderate income housing development under present zoning on subject property; that this property is the only parcel of land available for such development; that there is an urgent need for such housing in Evanston; that Black persons represent a substantial percentage of residents who suffer from inadequate housing and thus would benefit most from the proposed development; and that the practices of Evanston in its handling of zoning and housing problems including its refusal to rezone the Marywood property has had the effect of perpetuating racial segregation in that city in violation of various statutes. Plaintiffs claim that these actions violate the Thirteenth Amendment and Fourteenth Amendment of the United States Constitution; the Civil Rights Act of 1866 (42 U.S.C. §§ 1981, 1982); the Civil Rights Act of 1871 (42 U.S.C. § 1983); the Civil Rights Act of 1964 (42 U.S.C. § 2000d); the Fair Housing Act of 1968 (42 U.S.C. § 3601 et seq.) and the equal protection and due process clauses of the Fourteenth Amendment (Count I).

Plaintiffs Sisters and Interaction claim in addition that Evanston's actions have arbitrarily denied their Fourteenth Amendment right to use property in which they have an interest. (Count II).

## II.

Two extremely important caveats must be kept in mind in considering this case. While precedent is surely the keystone in delineating the *legal* framework and *constitutional* categories that this complaint might fall under it must be noted that cases of racial discrimination that raise issues of equal protection —due process denial and invalid exercise of police power are not fungible pegs that can summarily be slipped, on a factual level, into previously carved precedential slots. Since the crux of this genre of cases depends on the delicate balancing of infringed right against police power any fact unique to a certain case may tip the balance in favor or against one side and, consequently, one must be wary of relying on mere hypotheticals or remote analogies. This leads us to a second consideration also regarding facts. This case is before us on a motion to dismiss and undeniably the threshold of facts sufficient to survive such a motion is far lower than that required to ultimately carry the day. Under the Federal Rules on a motion to dismiss ". . . a complaint should be construed in the light most favorable to plaintiff with all doubts resolved in his favor . . .." Jung v. K. & D. Mining Co., 260 F.2d 607 (7th Cir. 1958); "the material allegations of the complaint are taken as admitted . . ." and "the complaint should not be dismissed unless it appears that appellant could 'prove no set of facts in support of his claim which would entitle him to relief' " Walker Process Equipment, Inc. v. Food Machinery Chemical Corp., 382 U.S. 172, 86 S.Ct. 347, 15 L.Ed.2d 247 (1965) and Conley v. Gibson, 355 U.S. 41, 78 S.Ct. 99, 2 L.Ed.2d 80 (1957) as cited in Jenkins v. McKeithen 395 U.S. 411, 421–422, 89 S.Ct. 1843, 23 L.Ed.2d 404 (1969). It is especially in civil rights disputes that we ought to be chary of disposing of the case on pretrial motions and courts do in fact have a prediliction for allowing civil rights cases to proceed until a comprehensive

record is available to either support or negate the facts alleged. "Summary judgment is rarely, if ever, appropriate where, as here, motive and intent are important to a resolution of the issues and never where, as here, serious questions of fact remain unresolved, as, for example, the racial composition of the neighborhoods involved." Gautreux v. Chicago Housing Authority, 265 F.Supp. 582, 584 (N.D.Ill.1967). See also Escalera v. New York Housing Authority, 425 F.2d 853 (2nd Cir. 1970). Many of the cases cited by both sides deal with disposition at a juncture chronologically much later in the judicial process, indicating that the causes involved survived initial motions to dismiss. Defendants argue that this is a "garden variety" zoning case but it is this "garden variety" case that has a way of suddenly sprouting strange fruit when the proofs are in and thus the facts alleged must be carefully weighed.

It is within this framework that we approach the merits of the case.

### III.

*Standing, Jurisdiction, Jurisdictional Amount.*

We hold that all plaintiffs have standing to sue subject to the condition that should it be proven at a later stage that the rights in issue are sufficiently represented by some of the plaintiffs we will allow the dismissal of other plaintiffs.

■ *Sisters:* This plaintiff's claim that the right to use property in which it has an interest has been infringed, in violation of the Fourteenth Amendment, by Evanston's arbitrary denial of the rezoning is sufficient to confer standing. In Kennedy Park Homes Ass'n v. City of Lackawanna, 318 F.Supp. 669 (W.D. N.Y.1970), the Diocese of Buffalo committed itself to sell 30 acres of land to a non-profit organization for low income housing. The City of Lackawanna rezoned the land and refused to issue certain permits necessary for the building of the project. The Diocese sued as one

of the plaintiffs claiming violation of the 14th Amendment and various Civil Rights Acts. Leaving aside the substantive issues for the moment, the court held that the Diocese had a "personal stake in the outcome" of the controversy and thus was a proper party. 318 F. Supp. at 697. See also Kennedy Park Homes Ass'n v. City of Lackawanna, 436 F.2d 108 (2nd Cir. 1970). The standing of Sisters in the present case involves precisely the same degree of personal stake and is also in conformity with "adversity" and "personal stake" requirements as seen in Baker v. Carr, 369 U.S. 186 at 204, 82 S.Ct. 691, 7 L.Ed.2d 663 (1961) and Association of Data Processing Service Organizations v. Camp, 397 U.S. 150 at 152, 90 S.Ct. 827, 25 L.Ed.2d 184. Surely if the allegations that Evanston has perpetuated racial segregation and that it has denied the rezoning petition for no valid reason are proven, the fact that Sisters was not directly effected by that decision in terms of racial discrimination does not make the arbitrariness of that behavior any more palatable or any less violative of their due process rights. Since Sisters allege that the matter in controversy exceeds $10,000 (Para. 3 Complaint) and the controversy does indeed involve $1.9 million we need not consider the various other civil rights statutes that do not require a jurisdictional amount.

■ *Interaction: Kennedy Park Homes Ass'n, supra,* is likewise dispositive of this plaintiff's standing. In that case Kennedy Park was a prospective buyer of the property involved and the court found sufficient "personal stake" to allow standing. Quite similarly in Southern Alameda Spanish Speaking Association (SASSO) v. City of Union City California, 424 F.2d 491 (9th Cir. 1970), plaintiffs had an option to buy property upon which they sought to build low and moderate income housing. They were successful in obtaining rezoning which was immediately nullified by the referendum. *SASSO* sued to set aside the referendum. Putting aside, for the moment, the substantive prob-

lems involved in referendum cases and the ultimate outcome of the case, although *SASSO* merely held an option to purchase the property the court nevertheless recognized the option as a property right sufficient to grant standing. See also Confederacion de la Raza Unida v. City of Morgan Hill, 324 F.Supp. 895 (N.D.Cal.1971) where plaintiffs also had option to purchase property and were granted standing. The "personal stake" position of *SASSO, Kennedy Park* and Interaction are almost identical and there is sufficient grounds for allowing the latter in as a plaintiff in this case. Their due process (Count II) rights were denied if Evanston, as alleged, refused the rezoning in an arbitrary and unconstitutional manner. The Complaint indicates that Interaction has done a great deal of preliminary work in planning this development and they are therefore quite adequate stakeholders in the outcome of this suit. The Complaint also alleges (Count I) that they are in addition suing in behalf of those individuals who will be denied housing if the property is not rezoned. This alone would be sufficient for standing. (See *infra* Neighbors and Center in regard to standing in a representative capacity.)

Defendants argue that since Interaction contracted to buy the land contingent upon rezoning, now that the City Council has denied the petition to rezone, Interaction's "personal stake" has been terminated. We find otherwise. The Complaint p. 10, states that the contract was contingent upon rezoning "or that construction of a 360-unit housing development be otherwise permitted by the Evanston City Council." It seems fairly clear that both these contingencies are not yet resolved. If plaintiffs succeed in this suit then the City Council may indeed be compelled to rezone in conformity with the Sisters-Interaction contract. The fact that this suit is being instituted indicates that there is a *continuing* effort to obtain the rezoning and the contract is yet in existence. Furthermore, the "otherwise" referring to the other means that would

permit the building of the 360-unit development, may well have contemplated this litigation. Thus, Interaction is a proper party. There is no lack of jurisdictional amount since $1.9 million is involved. Furthermore, Interaction claims it is also suing on behalf of potential inhabitants of the proposed housing whose civil rights have been violated and consequently no jurisdictional amount is required under 28 U.S.C. § 1343.

■ *Evanston Neighbors at Work and Evanston Housing Center:* Community organizations have been granted standing in various situations. In *Kennedy Park Homes Ass'n, supra,* the Colored People's Civic and Political Organization, an organization similar to Neighbors and Center was granted standing. In English v. Town of Huntington, 448 F.2d 319 at 321 (2nd Cir. 1971) the court said in regard to the standing of the plaintiff, Huntington Township Committee on Human Relations, ". . . . whether the association plaintiff, HTCHR, may properly represent the interests of minority groups depends on a showing at trial that '. . . there is a compelling need to grant them standing in order that the constitutional rights of persons not immediately before the court might be vindicated' quoting from Norwalk Core v. Norwalk Redevelopment Agency, 395 F.2d 920, 937 (2nd Cir. 1968)." In view of these cases we hold that Neighbors and Center are proper parties in this case.

### Individual Plaintiffs

■ Two issues are involved regarding individual plaintiffs, who are occupants of substandard housing and are potential inhabitants of the proposed Interaction development: 1) whether their interest is so remote as to deny standing; 2) whether they may sue as a class.

We hold that they are proper plaintiffs. In Gautreaux v. Chicago Housing Authority, 265 F.Supp. 582 (N.D.Ill. 1967) it was held that all present or potential occupants of public housing had

standing to sue in regard to site selection for public housing projects. In *Kennedy Park, supra,* two individuals who were prospective users joined in the suit against the city and were found to be proper parties. See also Shannon v. United States Dept. of Hud, 436 F.2d 809 (3rd Cir. 1970) and Hicks v. Weaver, 302 F.Supp. 619 (E.D.La.1969). The interests of the individuals in this case are therefore not so remote as to deny them standing.

We also find a proper class action under FRCP 23(a) and (b) (2). Individual plaintiffs properly represent the class of persons who would inhabit the proposed housing. See Gautreux v. Chicago Housing Authority, *supra*; Hicks v. Weaver, *supra,* and English v. Huntington Township, *supra,* all granting a class action to prospective users of the proposed housing. Defendants argue that since the property is zoned for 157 units the individual plaintiffs might well occupy 3 of those units and cannot be parties to a suit for rezoning to 360-units. This argument fails to comprehend the crux of the Complaint, that ultimately no housing will be built if rezoning is not granted since it is not economically feasible to build at a lower density. Thus individual plaintiffs are suing for the building of housing itself rather than for any number of units as such.

Under the various claims jurisdictional amount is not required as to individual plaintiffs. 28 U.S.C. § 1343.

*Failure to Exhaust State Remedies.*

■ We hold that since *Sisters* has exhausted its state remedies in regard to the zoning it would be futile for the other plaintiffs to have to pursue this matter anywhere outside the Federal Court. Furthermore, in view of the many Federal Statutes involved the case is properly in this Court. The various cases cited earlier all indicate that the Federal Court is the proper place to pursue this cause.

IV.

■ Plaintiff alleges that the City Council of Evanston's refusal to rezone the subject property has the purpose and effect of perpetuating segregation and is therefore racially discriminatory. One problem that must be disposed of at the outset is whether plaintiffs' claims are of an economic rather than a racial nature. Plaintiffs argue that it is not "economically" feasible to build less than a 360-unit development on the property while defendants counter that if Interaction is so deeply concerned with building middle and low income housing let them proceed with the 157 units for which the area is now properly zoned. Thus, defendants contend, this is simply a "garden variety" zoning case with no constitutional implications involved. We, however, view this matter differently at least for the purposes of this motion. To allege that the building of a 157-unit project on this property is not economically feasible and that there is no other available property in Evanston is to contend that either a 360-unit project must be built here or no project at all anywhere in Evanston. Evanston's amenability to a 157-unit project may be a very safe gesture indeed if it knows that such a development is virtually impossible, and its refusal to allow a larger project is by the same act a refusal to allow any low and moderate income housing to be built. Furthermore, if plaintiffs can prove that there was no valid reason for denying the rezoning it is irrelevant that 157 units can be built since they are entitled to the rezoning to accommodate the larger development.

If, then, the plaintiffs can prove that the Council's rejection of the rezoning petition had the purpose and effect of perpetuating racial patterns in a discriminatory manner in violation of various statutes and constitutional amendments, that a 157-unit project is economically impossible and most importantly that Interaction's plan has otherwise met Evanston's higher density zoning requirements they will have substantiat-

ed their allegations. Thus for the purposes of this motion we will treat the allegations as those of racial discrimination with "economic" feasibility as a secondary factor in the factual basis for this Complaint.

There also seems to be a problem in regard to whether plaintiffs are alleging racial discrimination or economic discrimination. Defendants argue that since the development is oriented towards law and middle income families the question here is one of discrimination against the poor which would negate numerous cases cited by plaintiff. We believe that plaintiffs' allegation that "Black Persons . . . represent a substantial percentage of residents of Evanston who have low and moderate incomes" (Complaint p. 12) is sufficient to bring this case into the realm of racial rather than economic discrimination.

There are three basic types of cases regarding zoning and housing problems that involve racial discrimination. The first deals with referendums that negate existent low and moderate income zoning or subject certain zoning to voter approval; the second involves those cases where the property as zoned accommodates low and moderate income housing but which is then rezoned by the city to exclude that housing; the third includes those cases where exclusion is accomplished by a refusal to rezone or a *refusal* to take affirmative action. Subsumed under each of these categories are cases which allege the zoning statute or referundum as being unconstitutional on its face while other assert that the *effect* of the ordinance is unconstitutional.

We believe that for the purposes of this action the cases involving referendums, though helpful in terms of standing, jurisdiction, and judicial attitudes towards discrimination in housing, are a category unto themselves. James v. Valtierra, 402 U.S. 137, 91 S.Ct. 1331, 28 L.Ed.2d 678 (1971) and Ranjel v. City of Lansing, 417 F.2d 321 (6th Cir. 1969) heavily relied on by defendant are thus not dispositive of the issues. The voting rights involved in those cases inject quite a different constitutional ingredient, one not present in pure zoning cases, and courts are quite understandably more willing to uphold referendum procedures rather than second guess or interfere with the fundamental suffrage right.

The second category of case where the city *actively* attempts to prevent low and moderate income housing by condemning or rezoning property that is being sought for that purpose and would under existent zoning accommodate such housing, is more easily decided for plaintiffs given the overt and blatant conduct. This conduct itself, given the surrounding circumstances, usually highlights the discriminatory intentions and effect involved and contributes heavily towards the burden of proof that is upon plaintiffs. Defendants would have us brush aside these cases as having no bearing on the present cause given the fact that Evanston has not actively instituted exclusionary zoning but rather has passively refused to rezone under a seemingly valid ordinance. We do not, however, regard this active-passive distinction as being by any stretch of the imagination a viable one. We need not comment on how much of an initiative a city must take to correct racially disproportionate housing absent a request to do so since this is not the case before us. The denial of a zoning petition though in a sense a negative process, when resulting in racial discrimination and part of a pattern that has perpetuated racial stratification is no less assertive conduct of a discriminatory nature than the more positive procedure of condemning or zoning out low and moderate income housing. Though the means may be different, they are both forms of zoning code manipulation whose effects are the same and the technical distinction between the degrees of activity involved is relevant only as to the burden of proof that the plaintiffs must bear rather than as to the question of whether a cause of action is sufficiently stated. Admittedly the burden of proving cause and effect

is easier where the city has rezoned to exclude but this does not mean that the present cause is impossible of proof.

By the same token defendants spend a great deal of time justifying the neutral, non-discriminatory complexion of the Evanston zoning ordinances and to that effect cite cases that indicate that a statute neutral on its face may be constitutional though its burden falls more heavily on minorities. Plaintiffs, however, aptly point out that proof of purpose and effect may establish racial discrimination despite the seeming neutrality of the statute or ordinance. The District Court in Kennedy Park, 318 F. Supp. at 694 recognized this when it stated:

"Judicial inquiry into the purpose or effect of governmental action is not limited to the moment that that action occurs. Not only must the 'immediate objective' of governmental action be considered, but the 'historical context' and 'ultimate effect' of such action must be considered as well. . . . The inquiry must further assess the 'reality' of the 'law's impact' and consider the 'background' against which state action operates to determine that reality . . . Therefore relevant to this inquiry are either past or prospective governmental actions which form a part of the background."

This is the very substance of an equal protection claim, that a seemingly neutral law has an unequal effect or is being unequally applied so as to deprive certain individuals of its protection. See Yick Wo v. Hopkins, 118 U.S. 356, 6 S.Ct. 1064, 30 L.Ed. 220 (1886); Reitman v. Mulkey, 387 U.S. 369, 87 S.Ct. 1627, 18 L.Ed.2d 830 (1967); Hunter v. Erickson, 393 U.S. 385, 89 S.Ct. 557, 21 L.Ed.2d 616 (1969). Ultimate effect can therefore be as probative of an intent to discriminate as proof of subjective motivation. Gautreux v. CHA, 436 F.2d 306 (7th Cir. 1970).

Thus simply stated the Complaint alleges that the housing history of Evanston indicates a purpose to perpetuate segregation and that in light of this Evanston cannot deny a petition to rezone by relying on existent zoning, absent a valid land use reason, where the effect of this denial is to further racial discrimination. This is not in any way inferring that a city must be rezoned to accommodate minority groups under circumstances where the subject property undeniably cannot carry a higher density but rather that it cannot use arbitrary land use criteria and refuse to rezone for black projects where under the same circumstances it would have granted a variance to an all white project. The entire case may well revolve around the validity of the environmental reasons given by Evanston in denying the petition, assuming that the preliminary charges are proven. That the question of whether the land use requirements are arbitrary or not will be based on precisely the same criteria as would appear in a conventional "garden variety" zoning case does not make this court any less appropriate a place to decide this case. Granted that the criteria might be the same but the ultimate constitutional impact of a finding of arbitrariness given the statutes and Amendments involved is far greater than is involved in the conventional zoning case.

Whether any of these allegations will be proven remains to be seen. The fact that these allegations have been properly and sufficiently stated cannot, however, be denied.

The following cases, while not decided on precisely the same grounds contain a sufficient number of similar claims as to be dispositive of whether a sufficient cause is stated.

In Kennedy Park Homes Association v. City of Lackawanna, 318 F.Supp. 669 (W.D.N.Y.1970) cited earlier indicates that a cause of action is adequately stated under the 14th Amendment, 42 U.S.C. § 1983 and the Fair Housing Act of 1968. Granted that in that case the property in question was *rezoned* to prevent the development but we have al-

ready indicated that a refusal to act can be as discriminatory as assertive conduct. Furthermore, a major portion of that suit was based on the Mayor's refusal to sign a "Sanitary 5" form which indicates that passivity in furtherance of racial discrimination is as much a violation of constitutional rights as activity. In Dailey v. City of Lawton, 425 F. 2d 1037 (10th Cir. 1970) an injunction under 42 U.S.C. 1983 was granted enjoining the city from denying a building permit for construction of low income housing. It was found that the city council and planning commission were racially motivated in denying a zoning change and the building permit. Although there too the city had previously rezoned the property, the controversy centered around the city council's refusal to rezone back to allow a low income housing project and its refusal to issue a building permit, and the court held that the refusal was arbitrary and racially motivated.

English v. Town of Huntington, No. 69 C 144, July 2, 1970, (E.D.N.Y.), affirmed 448 F.2d 319 (2nd Cir. 1971) cited by defendant as governing the disposition of this motion is not controlling given the fact that the Court there denied a *preliminary injunction* in a code enforcement case rather than *dismissed a complaint*. The sufficiency of allegations necessary for a preliminary injunction must certainly be more adequate than that required to survive a motion to dismiss and the court therefore refused to grant a preliminary injunction while at the same time explicitly recognizing that a cause of action was properly stated.

What these and the entire group of cases in this area indicates is that most if not all of the zoning-racial discrimination cases survive a motion to dismiss although they might indeed be dismissed further on in the trial process for failure to substantiate the facts alleged.

We have thus reached the following conclusions:

*Fourteenth Amendment Due Process and Equal Protection*: We hold that all parties properly state a cause of action based on these clauses. Individual plaintiffs certainly have sufficiently alleged violations and it must follow that the associations representing them also have met the threshold of sufficiency. *SASSO, Kennedy Park, Dailey, supra.*

*42 U.S.C. §§ 1981, 1982:*

There is sufficient allegation under these statutes to state a cause of action, as to plaintiff individuals and the associations supporting them. Defendants' sole rebuttal of these statutes is that they refer to racial discrimination rather than to discrimination based on poverty. We have already determined that plaintiffs allege *racial* discrimination and therefore they are properly within the cited statutes.

*42 U.S.C. § 1983:* All parties allege a sufficient cause of action to fall within the statute. *SASSO, Kennedy, Park, Dailey, supra.*

*Civil Rights Act of 1964 (42 U.S.C. § 2000d.)*

We hold that plaintiffs fail to state a cause of action under this statute. The statute specifically states that it applies only to a program or activity receiving Federal financial assistance. There is no allegation of this assistance and neither can there be since no project is yet being built.

*Fair Housing Act of 1968 (42 U.S.C. § 3601 et seq.):*

We hold that a sufficient cause of action is stated under this statute. See *Kennedy Park, supra.*

Defendants assert the old "floodgates" argument and contend that if we fail to dismiss this suit every developer who is refused rezoning will bring suit on these same grounds. If victims of racial discrimination under these same circumstances wish to seek relief no gates whatsoever ought to be placed in their path as they pursue the remedies allowed them under law and the Court should certainly be patient enough to entertain the cause past the motion to dismiss stage. Furthermore, Interaction

was formed for the purpose of increasing the supply of low and moderate income housing which bespeaks of its non-economic motivations and the fact that they have been able to master the assistance of Evanston Neighbors at Work and the Evanston Housing Center is some indication of the confidence which Interaction has elicited from non-profit, integration minded, associations who would probably not have joined in was this a simple case of a profit-minded tract developer.

The motion to dismiss is denied as to the complaint in general and is granted only in regard to claims under 42 U.S.C. § 2000d.