**Robert L. RASMUSSEN et al.,
Plaintiffs,**

**v.**

**The CITY OF LAKE FOREST, ILLINOIS, et al., Defendants.**

**No. 75 C 1305.**

United States District Court,
N. D. Illinois, E. D.

Nov. 10, 1975.

William T. Kirby, Chicago, Ill., and Adam M. Lutynski, Elgin, Ill., Joseph V. Karaganis, Chicago, Ill., for plaintiffs.

Thomas Compere, City Atty., Lake Forest, Ill., and R. Marlin Smith, Julian C. D'Esposito, Jr., Clifford L. Weaver and Barbara Baran, Chicago, Ill., for defendants.

## MEMORANDUM OPINION

FLAUM, District Judge.

Plaintiffs challenge the constitutionality of certain zoning ordinances of the City of Lake Forest. The defendants have moved to strike and dismiss the complaint. For the reasons stated below, the motion will be granted in part and denied in part.

Taking as true the well pleaded allegations of the complaint, the following fact situation is before the court. Because of rising taxes and costs, it is claimed that it is no longer profitable for Robert Rasmussen to sell or to continue to use his land as a farm. The defendant City of Lake Forest, in which the farm is included, has passed zoning ordinances [1] so that the land cannot be sold in lots of less than one and one half acres, or three acres. A limited partnership, plaintiff Lake Forest Properties, was formed by plaintiff Rasmussen and other plaintiff owners, investors, or trustees of interests in the land for the purpose of creating a residential housing development there. For this five million dollar enterprise to be financially successful, an exception to the zoning ordinances is necessary. Towards the obtaining of such an exception, some of the plaintiffs took part in a series of hearings before the defendant members of the Lake Forest Plan Commission. At these hearings, plaintiffs disclosed detailed plans for a residential community on the farmsite. Upon the Plan Commission's recommendation, the defendant members of the Lake Forest City Council denied plaintiffs' request for an exception. Plaintiffs then brought this suit to prevent the City Council from requiring compliance with the ordinances.

Plaintiffs further allege that the zoning ordinances they challenge and the refusal to grant an exception were motivated by a desire to make or keep virtually all the vacant land within the city limits unsuitable for any substantial influx from the expanding population of the Chicago Metropolitan area and that they have been successful. In passing these ordinances, in 1952 and 1955, Lake Forest changed the minimum lot size of the vast bulk of its nonresidential land from one fifth acre or one half acre, to one and one half acres or three acres.

It is contended that residential development on such large lots is not financially rewarding, and that Lake Forest has thus insulated itself from the population growth of the surrounding region. But for the ordinances, Lake Forest would be well suited for a share of the region's growth proportionate to the city's land area, since it has access to employment opportunities, transportation, sewers, and the other necessities of a dense residential community. An analysis of the regional population growth projected for the future indicates that Lake Forest will have a smaller and smaller proportion of the housing units needed in the surrounding region for the coming years.

Plaintiffs assert the following federal rights. They contend the enforcement of the zoning ordinances deprives them of their property rights without compensation, in violation of the Fifth Amendment and Fourteenth Amendment of the Constitution and that the enforcement constitutes an excessive burden on interstate commerce. They also claim the ordinance bears no rational relation to the City's police power, and is consequently void under the Fourteenth Amendment. Finally, plaintiffs make the relatively novel claim that the zoning ordinance unconstitutionally impinges on the "right to travel". This right is asserted both as an independent, fundamental right, and as a right derived from the Interstate Commerce Clause of the Constitution. Plaintiffs seek monetary and equitable relief.

Defendants' motion to strike and dismiss has numerous bases. The court is asked to abstain to permit a state court determination of the issues raised. In the alternative, it is argued that plaintiffs lack standing to assert the right to travel claims of prospective residents. The individual defendants resist claims for monetary relief on the grounds of

1. Lake Forest Zoning Code §§ 46–34(c), 46–35(c).

legislative and official immunity. The City, as defendant, is not covered by this ground. Defendants further argue that the relief requested is too intrusive for a federal court to impose upon a municipality, and that in any event, attorneys' fees are not warranted.

## CAUSE OF ACTION

■ The Supreme Court has found that a zoning ordinance is unconstitutional only if its provisions are "clearly arbitrary and unreasonable, having no substantial relation to the public health, safety, morals or general welfare". *Village of Euclid, Ohio v. Ambler Realty Co.*, 272 U.S. 365, 395, 47 S.Ct. 114, 121, 71 L.Ed. 303 (1926). In sustaining an ordinance which prevented industrial use of certain land, however, the Court recognized "the possibility of cases where the general public interest would so far outweigh the interest of the municipality that the municipality would not be allowed to stand in the way". *Id.* at p. 390, 47 S.Ct. at p. 119.

The thrust of the complaint in the present case is that Lake Forest's zoning ordinances are so inimical to the needs of growth of the surrounding region as to be unconstitutional. At this stage of the pleadings there has been no answer as to what, if any, legitimate function the ordinance serves. Defendants cite a number of cases in which zoning ordinances that may have been more restrictive and exclusive than the one here have been upheld as legitimate applica-

tions of the police power. *Village of Belle Terre v. Boraas,* 416 U.S. 1, 94 S. Ct. 1536, 39 L.Ed.2d 797 (1974); *Citizens Committee for Faraday Wood v. Lindsay,* 507 F.2d 1065 (2d Cir. 1974), *cert. denied,* 421 U.S. 948, 95 S.Ct. 1679, 44 L.Ed.2d 102 (1975); *Acevedo v. Nassau County, New York,* 500 F.2d 1078 (2d Cir. 1974). These decisions, however, followed a hearing as to the purpose and effect of the zoning ordinances.[2] None found the purpose alleged here, of limiting the influx of new residents in the community, to be operative. The closest federal case[3] appears to be the Ninth Circuit's decision in *Construction Ind. Ass'n of Sonoma City v. City of Petaluma,* 522 F.2d 897 (9th Cir. 1975) which found that a limitation on the rate of growth pursuant to a comprehensive plan was not an abuse of the police power. There is as yet no indication of a comprehensive plan here. See *Steel Hill Development, Inc. v. Town of Sanbornton,* 469 F.2d 956, 962 (1st Cir. 1972). In any event, these decisions do not foreclose the granting of relief under the allegations of this complaint. A cause of action has been stated under the Fourteenth Amendment.

Defendants have not argued at this stage that the economic impact of the zoning ordinance and refusal to grant an exception does not constitute a taking under the Fifth Amendment, although plaintiffs have argued in their brief that it does. This aspect of plaintiffs' complaint is not specifically addressed in defendants' motion to dismiss. Conse-

2. There may be regional circumstances which render a zoning decision constitutionally invalid. *Metropolitan Housing Development Corp. v. Village of Arlington Heights,* 517 F. 2d 409 (7th Cir. 1975). Any appropriate relief will of course be limited to the parties represented. *Millikan v. Bradley,* 418 U.S. 717, 94 S.Ct. 3112, 41 L.Ed.2d 1069 (1974); *Gautreaux v. Chicago Housing Authority,* 503 F.2d 930 (7th Cir. 1974).

3. Moreover, the court takes note of the numerous state cases cited in the briefs,

whose analysis of the validity of so called "exclusionary" zoning ordinances is not far removed from what a federal court must engage in for the evaluation of a zoning ordinance under the federal constitution. E. g., *National Land Investment Co. v. Kohn,* 419 Pa. 504, 215 A.2d 597 (1965); *Oakwood at Madison, Inc. v. Township at Madison,* 117 N.J.Super. 11, 283 A.2d 353 (1971); *Kaavenewsky v. Zoning Bd. of App. of T. of Warren,* 160 Conn. 397, 279 A.2d 567 (1971).

quently, the court does not consider this issue as having been adequately raised or briefed for ruling. For similar reasons, the court does not rule on the sufficiency of the claim that the zoning ordinance constitutes an excessive burden on interstate commerce.

## ABSTENTION

■ Defendants have suggested that this court abstain because delicate and complex issues of state law are involved, and because the federal constitutional questions raised may be obviated by a state court's application of the state constitution to the statutory authorization for municipal zoning ordinances, 24 Ill. Rev.Stats. § 11–13–1. No specific state constitutional section is mentioned, but defendants allude to the possibility that the 1970 Illinois Constitution may be construed to require a "consideration of regional needs in adapting local land use controls".[4] Defendants also allude to the possibility that Illinois courts will otherwise rule on the validity of the challenged ordinances, under § 11–13–1. Construing this section, Illinois has previously applied a standard of reasonableness similar to that appropriate for scrutiny of government action under the Fourteenth Amendment. See *LaSalle National Bank v. City of Highland Park*, 27 Ill.2d 350, 189 N.E.2d 302 (1963); *Galpin v. Village of River Forest*, 26 Ill.2d 515, 187 N.E.2d 233 (1962); *Citizens Bank & Trust Co. v. City of Park Ridge*, 5 Ill.App.3d 77, 282 N.E.2d 751 (1973).

The starting point of any abstention analysis is *Railroad Commission of Texas v. Pullman Co.*, 312 U.S. 496, 61 S.Ct. 643, 85 L.Ed. 971 (1941), in which an order by the Texas Railroad Commission was alleged to create violations of the Fourteenth Amendment and the Interstate Commerce clause of the federal constitution. The order required that sleeping cars be in the continuous charge of employees with the rank of conductor, but none of the Pullman Company's black employees were at that rank. Abstention was appropriate because of the prospect that the state court would find the order unauthorized by Texas law:

> "The complaint of the Pullman porters undoubtedly tendered a substantial constitutional issue. It is more than substantial. It touches a sensitive area of social policy upon which the federal courts ought not to enter unless no alternative to adjudication is open. Such constitutional adjudication plainly can be avoided if a definitive ruling on the state issue would terminate the controversy." 312 U.S. at 498, 61 S.Ct. at 644.

The rationale for this abstention was that the *meaning* of Texas law was in doubt, and would *still* be subject to subsequent interpretation by the Texas courts. The federal court was being "asked to decide an [constitutional] issue by making a tentative answer which may be replaced tomorrow by a state adjudication", 312 U.S. 500, 61 S.Ct. at 645 (explanation supplied). Abstention was held preferable.

The basis for abstaining in *Pullman* was not the mere existence of an alternative state avenue for resolving disputes that coincidentally involved important and sensitive issues of federal law; it was the presence of *ambiguity* in the state law, ambiguity whose resolution might by-pass the determination of federal questions.

Although not explicitly articulated by the Supreme Court, a distinction has arisen between the construction and application of local law, statutory and constitutional, on the one hand, and federal constitutional doctrines, whether as part

4. Def.Mem. in Supp. p. 10.

of the federal Constitution, or as counterparts in the state constitution, on the other. Abstention has been ordered where state courts would not, in effect, be applying federal provisions. *Reetz v. Bozanitch,* 397 U.S. 82, 87, 90 S.Ct. 788, 25 L.Ed.2d 68 (application of Alaska Constitution sections creating fishing rights in local waters; See, e. g., *Harris County Commissioners Court v. Moore,* 420 U.S. 77, 95 S.Ct. 870, 875–76, 43 L. Ed.2d 32 (1975) (Texas constitution might settle question of entitlement to office of incumbent redistricted justices of the peace); *Askew v. Hargrave,* 401 U.S. 476, 91 S.Ct. 856, 28 L.Ed.2d 196 (1971) (Florida Constitution supported claims distinct from federal claims raised); *City of Meridian v. Southern Bell Telephone and Telegraph Co.,* 358 U.S. 639, 79 S.Ct. 455, 3 L.Ed.2d 562 (1959) (Missouri courts could construe state law to decide whether it required appellee, as public utility, to pay for use of public streets); *Lewellyn v. Gerhardt,* 513 F.2d 184 (7th Cir. 1975) (terms of state conveyance statute could be construed to avoid question of unconstitutional taking of land); *Reid v. Board of Education of City of New York,* 453 F.2d 238 (2d Cir. 1971) (New York State Constitution guaranteed right to education, which could have rendered void state law or required state construction that would otherwise avoid federal due process claim).

Conversely, abstention has been held unwarranted when it would merely permit the state court to consider the state counterpart of a federal constitutional claim. *Wisconsin v. Constantineau,* 400 U.S. 433, 439, 91 S.Ct. 507, 27 L.Ed.2d 515 (1971); *McNeese v. Bd. of Ed. For Com. Sch. Dist. 187,* 373 U.S. 668, 674, 83 S.Ct. 1433, 10 L.Ed.2d 622 (1963); *Drexler v. Southwest Dubois School Corporation,* 504 F.2d 836 (7th Cir. 1974);

*Stephens v. Tielsch,* 502 F.2d 1360 (9th Cir. 1974). In *Wisconsin v. Constanteau, supra,* the majority refused to abstain in the face of Justice Burger's dissent, which pointed out that the Wisconsin statute under attack might be vulnerable to sections of the Wisconsin Constitution similar to the Due Process and Equal Protection clauses of the Fourteenth Amendment. In *Drexler,* an *en banc* panel of this Circuit declined to abstain from a federal review of the arbitrariness of the dismissal of a school teacher. The availability of state court review on the same question, whether under state law or under the state constitution, was clearly rejected as a ground for abstention. 504 F.2d at p. 839. The appellees in *Drexler* also asked for abstention on the ground that the teacher had allegedly made false statements, and that the state statute might be construed, for the first time, to thereby justify the dismissal on a ground independent of the arbitrariness. The "mere existence of an unlitigated theory" did not necessarily justify abstention. *Id.* This court considers the prospect of a state constitutional mandate for regional responsibility of a city's zoning power to be of the same description—the mere existence of an unlitigated theory. See *Zwickler v. Koota,* 389 U.S. 241, 251, 88 S.Ct. 391, 19 L. Ed.2d 44 (1967).[5]

Abstaining upon the possibility that a state court could make a federal constitutional decision unnecessary through an unlikely construction, unexpected state constitutional requirement, or, in effect, application of a doctrine such as arbitrariness typically applied by federal courts, would circumscribe the assigned role of federal courts in the vindication of civil rights. This concern was expressed by Judge Choy in *Stephens v. Tielsch, supra,* in refusing to abstain to

---

5. Defendants cite no statutory or state constitutional provision which would make such a mandate at all likely to be considered by an Illinois court, and no such provision has been found by this court.

allow the state court application of a state constitution due process clause to a federal civil rights complaint:

". . . a rule requiring abstention would seriously undermine the remedy afforded by the civil rights acts. Since most states have both some form of due process clause and some form of equal protection clause, abstention would be necessary, or at least within the power of the district judge, in nearly every civil rights action. Consequently, litigants' access to a federal forum would be significantly delayed. That could endanger the very effectiveness of the civil rights jurisdiction." 502 F.2d at 1362.

The case involved a challenge to a municipal statute that allowed for the towing of illegally parked cars without a hearing.

Defendants cite the case of *Rancho Paolos Verdes Corp. v. City of Laguna Beach*, 390 F.Supp. 1004 (C.D.Cal.1975), in which abstention was based upon "the complex California statutory scheme of land use control, much of which has not yet been interpreted by state courts." 390 F.Supp. at 1006. Land use planning was there described as a particularly sensitive issue which should be left to the state, if possible. The case cannot be persuasive here for several reasons. First, defendants point to no complex of unconstrued Illinois land use law whose construction would obviate this dispute. Second, Illinois law does not appear to coordinate the zoning ordinances of municipalities toward any particular state objectives. *Cf., Burford v. Sun Oil Co.*, 319 U.S. 315, 320–22, 63 S.Ct. 1098, 87 L.Ed. 1424 (1943). Finally, federal courts have refused to abstain from rulings on education, which is an equally sensitive and much more carefully state orchestrated activity. E. g., *McNeese v. Bd. of Ed. For Com. Sch. Dist. 187, supra; Drexler v. Southwest Dubois*

*School Corporation, supra.* Consequently, this court holds that the plaintiffs' choice of forum to litigate their civil rights must be honored. See *Anderson v. Salt Lake City Corporation*, 475 F.2d 29 (10th Cir. 1973), *cert. denied*, 414 U. S. 879, 94 S.Ct. 50, 38 L.Ed.2d 124 (1974).

## STANDING

Serious question exists as to the standing of these plaintiffs to assert a constitutional right to travel of prospective residents, not one of whom is represented in this lawsuit. There is no dispute over the general rule that one cannot sue for the deprivation of the civil rights of others. E. g., *Bailey v. Patterson*, 369 U.S. 31, 82 S.Ct. 549, 7 L.Ed.2d 512 (1962); *U. S. v. Raines*, 362 U.S. 17, 80 S.Ct. 519, 4 L.Ed.2d 524 (1960); *Tileston v. Ullman*, 318 U.S. 44, 63 S.Ct. 493, 87 L.Ed. 603 (1943). Plaintiffs claim, however, that an exception to this rule is warranted since a constitutional deprivation of a third party is coupled with their own, real, financial injury, as in *Pierce v. Society of Sisters*, 268 U.S. 510, 45 S.Ct. 571, 69 L.Ed. 1070 (1925), and because there can otherwise be no occasion for this court to review the alleged constitutional deprivation. *Barrows v. Jackson*, 346 U.S. 249, 73 S.Ct. 1031, 97 L.Ed. 1586 (1953).

The standing question presented by this case is whether the economic injury to plaintiffs places them in a position appropriate to vindicate the rights of third parties. Commenting generally on this matter, the Supreme Court recently said:

". . . even when the plaintiff has alleged injury sufficient to meet the 'case or controversy' requirement, this Court has held that the plaintiff generally must assert his own legal rights and interests, and cannot rest his claim to relief on legal rights or inter-

ests of third parties. Without such limitations—closely related to Article III concerns but essentially matters of judicial self-governance—*the courts would be called upon to decide abstract questions of wide public significance even though other governmental institutions may be more competent to address the questions* and even though judicial intervention may be unnecessary to protect individual rights." *Warth v. Seldin,* 422 U.S. 490, 95 S. Ct. 2197, 2205, 2206, 45 L.Ed.2d 343 (1975) (citations omitted, emphasis added).

In *Warth,* individual plaintiffs were held to lack standing to challenge a zoning ordinance because they did not allege their own failure to find housing was caused by the ordinance. There, as in the present case, however, it was generally alleged that the municipality had made "practically and economically impossible the construction of sufficient numbers of low and moderate income . . . housing" to satisfy its regional share of housing requirements. 95 S.Ct. at 2203. Although denial of standing was premised upon lack of a judicially cognizable injury, the case is still instructive as an index of the specificity the Supreme Court advises for the review of a zoning ordinance in terms of the rights of prospective residents.

The problem of specificity here is not with the sufficiency of the stake in the outcome to assure an adversary context. *Cf. Baker v. Carr,* 369 U.S. 186, 204, 82 S.Ct. 691, 7 L.Ed.2d 663 (1962). There is no doubt that plaintiffs are sufficiently motivated to gain an exception to or even a ruling of invalidity of the City's zoning ordinances. There must be in addition an injury to them regarding the particular constitutional interest that they assert. *Schlessinger v. Reservists Committee to Stop the War,* 418 U.S. 208, 94 S.Ct. 2925, 2934, 41 L.Ed.2d 706 (1974), citing *Doremus v. Board of Education,* 342 U.S. 429, 435, 72 S.Ct.

394, 96 L.Ed. 475 (1952); *Association of Data Processing Service Org., Inc. v. Camp,* 397 U.S. 150, 154, 90 S.Ct. 827, 25 L.Ed.2d 184 (1970). The problem is one that is more often associated with cases where the judicially cognizable injury requisite for standing has not been alleged, namely that courts may be dealing with problems of wide public significance without any specific context. *Warth v. Seldin, supra,* 95 S.Ct. at p. 2206. Of course, given a specific context, courts can and have decided such questions. *Cf., Brown v. Board of Education,* 347 U.S. 483, 74 S.Ct. 686, 98 L. Ed. 873 (1954).

The constitutional right to travel is particularly susceptible to the lack of specificity presented by this lawsuit. The Supreme Court cases that have considered it have been concerned with actual travelling on interstate roads, *United States v. Guest,* 383 U.S. 745, 86 S.Ct. 1170, 16 L.Ed.2d 239 (1966); *Griffin v. Breckenridge,* 403 U.S. 88, 91 S.Ct. 1790, 29 L.Ed.2d 338 (1971), passage between states, *Edwards v. California,* 314 U.S. 160, 62 S.Ct. 164, 86 L.Ed. 119 (1941), or the conditioning of government functions on the recency of interstate travel. E. g., *Shapiro v. Thompson,* 394 U.S. 618, 89 S.Ct. 1322, 22 L.Ed.2d 600 (denial of welfare benefits because of recency of state or District of Columbia residency); *Memorial Hospital v. Maricopa County,* 415 U.S. 250, 94 S.Ct. 1076, 39 L.Ed.2d 306 (1974) (denial of medical benefits which amounted to a basic necessity of life because of recency of county residency; indigent plaintiff had previously resided in another state); *Dunn v. Blumstein,* 405 U.S. 330, 92 S. Ct. 995, 31 L.Ed.2d 274 (1972) (durational residency requirement for voting). The residency cases have concerned either items necessary for life, or else independent fundamental rights (e. g., the right to vote). In *Memorial Hospital* the court explicitly reserved the question of whether the right extends to intrastate migration, 94 S.Ct. at 1081,

and indicated ". . . the right of *interstate* travel must be seen as insuring new residents the same right to vital government benefits and privileges in the States to which they migrate as are enjoyed by other residents." *Id.* at 1084 (emphasis added). See also, *Sosna v. Iowa*, 419 U.S. 393, 95 S.Ct. 553, 568, 42 L.Ed.2d 532 (1975) (Brennan, J., dissenting).

While a number of courts have flatly indicated that durational residency requirements cannot cause a discrimination in the allocation of public housing openings, e. g., *Cole v. Housing Authority of City of Newport*, 435 F.2d 807 (1st Cir. 1970); *accord, King v. New Rochelle Municipal Housing Authority*, 442 F.2d 646 (2d Cir. 1971) *cert. denied*, 404 U.S. 863, 92 S.Ct. 113, 30 L.Ed.2d 107 (1972), they had prospective residents litigating before them, and they based their holdings on the equal protection clause.[6] Public housing may be construed as a governmental benefit which must be distributed equally, vis à vis residency duration, once it is being distributed at all.[7] A single prospective resident might narrowly present the question whether, for him, a particular housing unit or zoning ordinance should be so construed. Also, characteristics of the prospective resident may change the applicability of the right.[8]

The matter is even further complicated by the fact that the Supreme Court has in effect held that there is no absolute obligation of a community to provide poor persons, residents or non-residents, with housing, *James v. Valtierra*, 402 U.S. 137, 91 S.Ct. 1331, 28 L.Ed.2d 678 (1971), and that there is similarly no fundamental right to housing itself, *Lindsey v. Normet*, 405 U.S. 56, 74, 92 S.Ct. 862, 31 L.Ed.2d 36 (1972).[9] Before becoming involved in this thicket of constitutional dimensions, a court should have a specific litigant before it to establish a focal point for its constitutional analysis.[10]

---

6. These cases have also indicated that the right to travel, as they have applied it, flows to intrastate migration. *Edwards v. California*, 314 U.S. 160, 62 S.Ct. 164, 86 L.Ed. 119 (1941), considered a situation closely analogous to the present case in finding the State of California constitutionally prohibited, under the Interstate Commerce Clause, from impeding the flow of poor persons into its boundaries. States within the country were held unable to seal themselves off from the movement of poor persons within the country. The present case seeks a constitutional guarantee that municipalities within a state are unable to seal themselves off from the movement of persons within the state. Without considering the extension of the Interstate Commerce Clause rationale to support an intrastate right to travel, the court finds serious standing problems exist for plaintiffs' assertion of such an extension—problems comparable to those which arise with the assertion of the right as implicitly guaranteed by the Constitution, the position considered by all the other cases cited herein.

7. *Demiragh v. DeVos*, 476 F.2d 403 (2d Cir. 1973) struck down a municipal ordinance conditioning municipal welfare benefits on the time that residency began. That court also indicated a municipality cannot absolutely exclude welfare recipients, although the position was not clearly grounded solely on the right to travel. See also, *Barnes v. Bd. of Trustees, Michigan Veterans Trust F.*, 369 F.Supp. 1327 (W.D.Mich.1973) (discrimination as to time of residency before entrance into service could not justify allocation of emergency benefits)*; Barrick Realty, Inc. v. City of Gary, Indiana*, 354 F.Supp. 126 (N.D.Ind.1973), aff'd 491 F.2d 161 (7th Cir. 1974) (substantial hardship and impermissible objective such as excluding poor persons are ingredients of right to travel).

8. The majority in *Village of Belle Terre v. Boraas*, 416 U.S. 1, 94 S.Ct. 1536, 1540, 39 L.Ed.2d 797 (1974) found that an ordinance prohibiting unrelated persons from living together in one family dwelling did not impinge upon the right to travel set forth in *Shapiro v. Thompson*, supra, because the zoning ordinance was "not aimed at transients".

9. The right to travel was not specifically raised in either of these cases.

10. The court is aware that by reviewing the arbitrariness or impermissible objectives of a

The District Court in *Construction Ind. Ass'n of Sonoma County v. City of Petaluma,* 375 F.Supp. 574 (C.D.Cal. 1975), nonetheless found a builders' association to have standing to assert the right to travel of prospective residents who were allegedly prevented from living in a city because of zoning ordinances. That court reasoned as follows. *Dunn v. Blumstein, supra,* explained that *Shapiro v. Thompson* did not consider the only infringement to the right to be an actual deterrence. It was therefore not necessary to demonstrate that anyone had in fact failed to move from one state to another because of the durational residency criterion for welfare benefits. Judge Burke then concluded that it was thus not necessary to have an actual litigant who had been deterred from moving into the City of Petaluma. 375 F.Supp. at 581–582. *Shapiro,* however, had before it litigants who had been *penalized* for exercising their right to interstate travel. Recent exercise of the right had impaired their eligibility for welfare benefits. It was because of that fact that a demonstration of deterrence was not required. No penalized resident is present in this lawsuit, and this court declines to make the extension entered into by Judge Burke.[11]

Standing may, on occasion, still be appropriate for the vicarious assertion of constitutional rights. Exceptions to the general rule exist whenever Congress enacts specific legislation, such as the Fair Housing Act of 1968, which by implication grants a right of standing to assert the rights of others. *Warth v. Seldin, supra,* 95 S.Ct. at p. 2206; *United States v. SCRAP,* 412 U.S. 669, 93 S.Ct. 2405, 37 L.Ed.2d 254 (1973); *Park View Heights Corp. v. City of Black Jack,* 467 F.2d 1208, 1214 (8th Cir. 1972); *Sisters of Prov. Of St. Mary Of Woods v. City of Evanston,* 335 F.Supp. 396 (N.D.Ill. 1971).[12] Plaintiffs point to no such statutory policy supporting their standing to raise the right to travel claims of prospective residents.

An additional exception may occur when denial of standing could entirely insulate a constitutional deprivation from review. *Barrows v. Jackson, supra.* This factor however, may not necessarily be sufficient to confer standing:

"Closely linked to the idea that generalized citizen interest is a sufficient basis for standing was the District Court's observation that it was not irrelevant that if respondents could not obtain judicial review of petitioner's actions, 'then as a practical matter no one can.' Our system of government leaves many crucial decisions to the political processes. The assumption that if respondents have no standing to sue, no one would have standing, is not a reason to find standing." *Schlesinger v. Reservists Committee to Stop The War,* 418 U.S. 208, 94 S. Ct. 2925, 2935, 41 L.Ed.2d 706 (1974) (citations omitted).

In any event, plaintiffs have given no cogent reason why prospective residents cannot, logistically, bring right to travel

zoning ordinance and the refusal to grant an exception, it may effect the availability of housing to those very persons who are not represented in this lawsuit. This investigation, however, is far more general than would be the case if a prospective resident were a plaintiff, and does not foreclose such a resident from asserting his other rights at a future date.

11. Subsequent to the ruling, *Warth v. Seldin* was decided by the Supreme Court, and relied on the Ninth Circuit Court of Appeals in reversing the District Court's ruling and finding that there was no standing to raise the right to travel claim. *Construction Industry Association of Sonoma County v. City of Petaluma,* 522 F.2d 897 (9th Cir. 1975).

12. *Park View* and *Sisters of Prov.* mention alternative theories of standing, but permeating those discussions is an awareness of the importance of reviewing racially discriminatory housing practices, a concern underlying the Fair Housing Act.

claims themselves, as in *Eisenstadt v. Baird,* 405 U.S. 438, 92 S.Ct. 1029, 31 L. Ed.2d 349 (1972). No infringement of valuable rights would occur through the mere self-identification inherent in filing a lawsuit. *NAACP v. Alabama,* 357 U.S. 449, 78 S.Ct. 1163, 2 L.Ed.2d 1488 (1958). Even if this hurdle is crossed, cases conferring standing on this basis have typically required some relationship between the party raising the constitutional right and the party to whom the right directly flows. E. g., *Barrows v. Jackson, supra,* (sale of a specific parcel of land by plaintiff to particular non-caucasian persons) ; *Sullivan v. Little Hunting Park,* 396 U.S. 229, 90 S.Ct. 400, 24 L.Ed.2d 386 (1969) (lessor and lessee of specific parcel of land). In *Pierce v. Society of Sisters,* 268 U.S. 510, 45 S.Ct. 571, 69 L.Ed. 1070 (1925), a parochial and a military school, each of which had served an Oregon community for a number of years, were given standing to assert the rights of the children of parents in that community to attend the schools, notwithstanding a municipal ordinance. No comparable relationship exists between plaintiffs and prospective residents. Neither is there the intertwining of rights that has on occasion persuaded the Supreme Court to allow standing, as in *Griswold v. Connecticut,* 381 U.S. 479, 85 S.Ct. 1678, 14 L.Ed.2d 510 (1965) (doctor prescribing contraceptives for patient), and *Eisenstadt v. Baird,* supra (advocate of right to obtain contraceptives could assert the right of persons to do so),[13] to assert the rights of others.

For the foregoing reasons, the court finds this case does not fall into any exceptions to the general rule denying vicarious standing. Moreover, the nature of the issues presented and the possibility that a prospective resident could have been joined as a plaintiff make extension of these exceptions imprudent. Consequently, plaintiffs do not have standing to raise the right to travel of persons who might move into their real estate development if the zoning ordinance and failure to make an exception are found to be unconstitutional.

IMMUNITY

The members of the City Council and the members of the Plan Commission are argued to be immune from any damages claim related to their official duties. The members of the Plan Commission are also argued to have too remote a relationship to the plaintiffs' alleged injury to be the subject of monetary relief. No motion is made with regard to the prayer for equitable relief against these defendants.

■ The damages claim must be dismissed because of the unsettled nature of the law which plaintiffs seek to apply. Assuming *arguendo* that this court were to find, after a trial, that the refusal [14] to make an exception to the zoning ordinance were unconstitutional as an arbitrary use of the police power, defendants could not be charged with a knowledge of the outcome of a development in constitutional law. *Slate v. McFetridge,* 484 F.2d 1169, 1174 (7th Cir. 1973). No malice has been alleged. The most recent Supreme Court decision on the matter is consonant with *Slate* and with a qualified immunity of public officials which would bar recovery under these allegations. *Wood v. Strickland,* 420 U.S. 308, 95 S.Ct. 992, 43 L.Ed.2d 214 (1975).

13. The exceptional standing in this case was in part based on the involvement of the First Amendment. 405 U.S. 445 n. 5, 92 S. Ct. 1029.

14. Under the allegations of the complaint, defendants were performing discretionary functions within the scope of their official authority. Cf. *Doe v. McMillan,* 412 U.S. 306, 93 S.Ct. 2018, 36 L.Ed.2d 912 (1972) ; *Bivens v. Six Unknown Named Agents of Fed. Bur. of Narc.,* 456 F.2d 1339 (2d Cir.), *aff'd* 403 U.S. 388, 91 S.Ct. 1999, 29 L.Ed.2d 619 (1972).

Damages were sought in *Wood* against members of a school board for their unconstitutional manner of expelling a student from school. After noting that public officials in general should not be absolutely immune from damages and the consequent deterrent for unconstitutional conduct, citing *Pierson v. Ray*, 386 U.S. 547, 554, 87 S.Ct. 1213, 18 L.Ed.2d 288 (1967), Mr. Justice White said:

> "The imposition of monetary costs for mistakes which were not unreasonable in light of all the circumstances would undoubtedly deter even the most conscientious school decisionmaker from exercising his judgment independently, forcefully, and in a manner best serving the long-term interest of the school and students. The most capable candidates for school board positions might be deterred from seeking office if heavy burdens upon their private resources from monetary liability were a likely prospect during their tenure.

> \* \* \* \* \* \*

> " . . . But at the same time, . . . absolute immunity would not be justified since it would not sufficiently increase the ability of school officials to exercise their discretion in a forthright manner to warrant the absence of a remedy for students subjected to intentional or otherwise inexcusable deprivations." 95 S.Ct. 999–1000.

The standard arrived at by the Supreme Court forecloses recovery of damages where the constitutionality of the action involved is not settled at the time the action takes place:

> "The official must himself be acting sincerely and with a belief that he is doing right, but an act violating a student's constitutional rights can be no more justified by ignorance or disreguard of *settled, indisputable law* on the part of one entrusted with supervision of student's daily lives than by the presence of actual malice. To be entitled to a special exemption from the categorical remedial language of § 1983 in a case in which his action violated a student's constitutional rights, a *school board member who has voluntarily undertaken the task of supervising the operation of the school and the activities of the students, must be held to a standard of conduct based not only on permissible intentions, but also on knowledge of the basic, unquestioned constitutional rights of his charges."* 95 S.Ct. at 1000, 1001 (emphasis added).

 It is axiomatic that public officials are not privileged to deprive citizens of constitutional rights, and equally well settled that arbitrary implementation of the police power by a public official leads to such deprivations. At this level of generality, however, the standard set forth in *Wood* would virtually never confer immunity from damages on a public official, a result which the Supreme Court could not have intended. As a minimum, absolute immunity to damages, in the absence of malice, must exist wherever, at the time of the action, a substantial question could be raised as to whether or not the action in question creates a deprivation of constitutional rights. Given the current lack of federal and Illinois state precedent [15] on the power of a municipality to maintain large lot zoning in a region whose population density is growing, an award of damages against public officials in what must be characterized as case of first impression would be inimical to the efficient functioning of government.[16]

---

15. As discussed earlier in this opinion, however, ambiguity of the present sort does not call for abstention.

16. Because of the court's conclusion, it is unnecessary to discuss whether the refusal of municipal officials to make an exception to a

## MOTIONS TO STRIKE

In the process of trying to convince defendants to recommend and allow an exception to the City's zoning ordinances, plaintiffs allegedly devised and presented a detailed plan for a residential community, taking into account aesthetics, health, transportation, and other factors that a zoning board might consider. Plaintiffs request this court to declare their plan meets all legitimate police power objectives, and to enjoin defendants from enforcing the challenged ordinances so as to preclude implementation of the plan. Contrary to defendants' argument, this court does not interpret the complaint as requesting any relief coercing the City to allow the implementation of plaintiffs' plan. The relief requested would not impair the city's legitimate zoning discretion. It is thus not necessary at this time to address the limitations of equitable relief that would be appropriate for a federal court ruling on the land use decisions of a municipality. *Cf. Lerner v. Town of Islip,* 272 F.Supp. 664 (E.D.N. Y.1967). Relief, if appropriate, would be fashioned only after a hearing.

■ As additional relief, plaintiffs seek an award of attorneys' fees. No statutory authorization for the award of attorney's fees exists. Consequently, *Alyeska Pipeline Service Co. v. Wilderness Society,* 421 U.S. 240, 95 S.Ct. 1612, 44 L.Ed.2d 141 (1975) restricts any award of such fees to limited circumstances. There is no finite unrepresented group which will benefit from this action, as in *Mills v. Electric Auto-Lite*

*Co.,* 396 U.S. 375, 90 S.Ct. 616, 24 L.Ed. 2d 593 (1970) or *Hall v. Cole,* 412 U.S. 1, 93 S.Ct. 1943, 36 L.Ed.2d 702 (1973). No allegations of bad faith or delay of litigation have been made against defendants to make applicable *Newman v. Piggie Park Enterprises, Inc.,* 390 U.S. 400, 401, 88 S.Ct. 964, 19 L.Ed.2d 1263 (1968). The legal position of defendants cannot be characterized as being with so little merit that in the event of loss they should in essence be penalized the amount it cost plaintiffs to bring this complaint. Consequently, the motion to strike the prayers for attorneys' fees must be granted.

■ Considerable attention was devoted in the briefs to a motion to strike the complaint for being redundant, immaterial and impertinent. Without commenting on the style in which the complaint was written, the court finds that it was sufficient to apprise defendants of the basis of the claim for relief. More is not required. See Federal Rule of Civil Procedure 8(a), (f).

## CONCLUSION

For the foregoing reasons, the motion to strike and dismiss is granted in part and denied in part. The court declines to abstain, and finds plaintiffs lack standing to assert the right to travel claims of prospective residents. Otherwise, the complaint states a cause of action. However, the motion to strike is granted as to the prayers for monetary relief against the individual defendants, and for attorneys' fees sustained by plaintiffs at this juncture of the lawsuit.

---

zoning ordinance passed according to a state statute incorporates the character of state legislative power so as to confer absolute immunity from damages claims under *Tenney v. Brandhove*; 341 U.S. 367, 71 S.Ct. 783, 95

L.Ed. 1019 (1951). See *Martone v. Mc-Keithen,* 413 F.2d 1373 (5th Cir. 1969); *Ka-Haar, Inc. v. Huck,* 345 F.Supp. 54 (E. D.Wis.1972).